[L.A. No. 29898. In Bank. Nov. 4, 1971.]

JOHN HERBERT ROBERTS, Plaintiff and Respondent, v.
EARL W. BRIAN, as Director, etc., Defendant and Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, Edward M. Belasco and Melvin R. Segal, Deputy Attorneys General, for Defendant and Appellant.

James A. Broderick Jr., Brian J. Kennedy and Broderick & Kennedy for Plaintiff and Respondent.

**OPINION**

**TOBRINER, J.**—Plaintiff (petitioner herein) John Roberts requires individualized nursing care during his waking hours because of frequent

seizures which, in the absence of prompt medical aid, would cause his death. Defendant (respondent herein) declined to provide funds for such care on the ground that the expenditure was not authorized by Medi-Cal regulations. Petitioner brought mandate in the superior court; that court held that the pertinent Medi-Cal regulations were unconstitutional as applied to petitioner, and directed respondent to vacate his decision denying him aid. Respondent appeals.

On examining the present Medi-Cal regulations, we conclude that petitioner is entitled to individualized nursing care either in a nursing home, if financially feasible, or in a hospital. Since petitioner can receive the care he requires under the present regulations, we need not, and do not, decide the constitutional issue he raises.

We therefore agree with the trial court that the ruling of respondent should be vacated and the matter remanded. We do not affirm the trial court's judgment, however, since that judgment (a) unnecessarily finds that the Medi-Cal regulations are unconstitutional as applied to petitioner, and (b) impliedly orders respondent to provide the needed services in a manner inconsistent with present Medi-Cal regulations. We therefore reverse the judgment of the superior court, and remand the cause to that court to amend its findings and judgment to conform to our views.

Petitioner suffers from a rare or unique disease characterized as "myoclonic epilepsy." He has frequent seizures and little control over his body. Strong light, loud noises, high temperatures, and similar nervous stress can cause a severe seizure during which petitioner, if unassisted, could choke to death. Since he lacks sufficient muscle control to summon help during a seizure, his physician has prescribed that he have a personal attendant to assist him during his waking hours, about 15 hours a day. Petitioner is 42 years old and has suffered from this disability for about 17 years; although he has experienced periods of remission, his physician cannot predict when or whether further remissions will occur, nor is there any presently known cure for his disease. Totally disabled, petitioner receives state aid under chapter 6 of division 9 of the Welfare and Institutions Code; he is also eligible for, and receives, medical assistance under chapter 7 of that division, commonly referred to as the Medi-Cal program.

Since 1968, except for a brief hospitalization, petitioner has resided at the Superior Convalescent Hospital, a nursing home which provides routine nursing care. Medi-Cal reimburses the nursing home for this expense. The nursing home does not provide the personal attendants which petitioner's condition requires; in 1968 and 1969 those attendants were paid with funds

advanced by petitioner's sister. On September 10, 1969, the Department of Health Care Services discontinued Medi-Cal benefits to petitioner, apparently on the ground that the sums advanced by his sister constituted income which made him liable for a share of the nursing home fee. Petitioner requested a hearing, contending both that the sister's payments did not constitute income to him, and that Medi-Cal should assume the burden of paying the needed personal attendants. On December 10 the hearing examiner submitted a proposed decision finding for petitioner on his first contention and recommending restoration of Medi-Cal benefits. He also found, however, that "there are no provisions under the Medi-Cal program which permit payment for attendant care for a patient in a hospital or in a convalescent nursing home." Respondent approved the proposed decision on December 31, 1969.

Petitioner then sought mandate in the superior court. The court found "that Petitioner . . . suffers from a unique form of illness and condition of disability which is such that personal and individual nursing care is constantly required for him for a period of not less than 15 hours per day." Respondent does not challenge the accuracy of this finding. The trial court further found that respondent provides persons with "unique forms of illness and conditions of disability, the medical facilities of the . . . pulmonary respirator and renal dialysis machine"; and that "individualized nursing care . . . is, to Petitioner . . ., a medical facility to him in the same manner and sense as the said pulmonary respirator and the said renal dialysis machine." The court therefore concluded that respondent's denial of individualized nursing care to petitioner violated the equal protection clause of the Fourteenth Amendment.

On January 11, 1971, the superior court entered judgment vacating the respondent's decision of December 31, 1969, remanding the matter to respondent for further proceedings, and awarding petitioner $500 in attorney's fees. The judgment further decrees that respondent's refusal of individualized nursing services to petitioner violated the Medi-Cal Act and denied him equal protection of the laws.

The Medi-Cal program was enacted in 1965 to provide "health care and related remedial or preventive services to recipients of public assistance and to medically indigent aged or other persons." (Welf. & Inst. Code, § 14000.) It is partially supported by federal grants under Title 42, United States Code section 1396.[1] Section 14001.1 declares that "It is the intention of the Legislature, whenever feasible, that the needs of recipients of

---

[1] For a review of the structure and history of the state and federal medical assistance programs, see *Morris* v. *Williams* (1967) 67 Cal.2d 733, 738-744 [63 Cal.Rptr. 689, 433 P.2d 697].

public assistance for health care and related remedial or preventive services be met under the provisions of this chapter." Section 14053 defines "health care"; the definition includes "inpatient hospital services," "skilled nursing home services," and "private duty nursing services."

The Medi-Cal program is administered by respondent Director of Health Care Services. Welfare and Institutions Code section 14105 provides that "The director shall prescribe the policies to be followed in the administration of this chapter and the scope of the services to be provided, and may limit the rates of payment for such services, and shall adopt such rules and regulations as are necessary for carrying out, not inconsistent with, the provisions thereof."

Petitioner observes that under this program the director has provided for patients suffering from rare and life-threatening disabilities pulmonary respirators (iron lungs) and renal dialysis machines (artificial kidneys). He contends that individualized nursing care is, to him, a "medical facility" fully comparable to such machines, and that to deny him such care is to deprive him of the equal protection of the laws. Respondent answers that the Medi-Cal program commands limited funds, which are insufficient to meet all medical needs of the eligible recipients; he must therefore choose to fulfill some needs but fail to do so for others. (Cf. *Dandridge* v. *Williams* (1970) 397 U.S. 471, 487 [25 L.Ed.2d 491, 503, 90 S.Ct. 1153].) Respondent does not argue that aid to petitioner is financially infeasible, but simply that he has issued no regulation providing for such care.

As we understand respondent's position, he contends that he and former directors in issuing Medi-Cal regulations have created a series of classifications for medical treatment, and that an eligible patient can receive only such medical treatment as comes within one or another of these categories. Since petitioner suffers from a unique illness, with abnormal requirements, his claim does not quite fit within any of the pigeon holes. Respondent could, of course, issue new regulations taking account of petitioner's plight, but he has not done so. Respondent's argument stops here, but the inevitable, if unspoken, conclusion is that petitioner will not receive the nursing care he needs and, regrettably, will die.

Fortunately, neither the statutes nor regulations compel so horrific a result. Instead, as we shall point out, present Medi-Cal regulations establish petitioner's right to receive the individualized nursing care he needs in a nursing home, if suitable financial arrangements can be made, or in a hospital. We need not, therefore, resolve the constitutional issue petitioner presents.

In title 22 California Administrative Code section 51215 the director

has established standards for nursing homes seeking to qualify for Medi-Cal payments. Standards (C), (E), and (H) are pertinent to this case. They require that:

"(C) The facility employs staff sufficient in number and qualifications to meet the requirements of the patients accepted for care. . . .

"(E) Patient care is provided in accordance with written policies formulated with the advice of one or more physicians and one or more registered professional nurses. . . .

"(H) The facility provides 24-hour nursing services adequate in quality and amount to meet the needs of the patients who are admitted to, and remain in, the facility."

■ Petitioner contends, and we agree, that under these standards a nursing home which accepts him as a Medi-Cal patient must provide him with the nursing services that he needs and his physician prescribes. Respondent argues that a nursing home need only provide adequate general nursing services, and not the exceptional services required for petitioner. Respondent's regulation, however, does not speak in terms of meeting the prescribed needs of an average or typical patient, but clearly ordains that services meet the prescribed personal needs of the specific patients accepted for care.

The federal statutes authorizing payments to support state medical assistance programs likewise prescribe that nursing home services be adequate to meet the individual needs of their patients. Title 42 of the United States Code, section 1396a, states that "A state plan for medical assistance must . . . (26) . . . provide . . . (B) for periodic inspections to be made in all skilled nursing homes . . . of (i) the care being provided in such nursing homes . . . to persons receiving assistance under the State plan, (ii) with respect to each of the patients receiving such care, the adequacy of the services available in particular nursing homes . . . to meet the current health needs and promote the maximum physical well-being of patients receiving care in such homes." ■ Although this statute nominally establishes standards for inspection of homes, it clearly assumes that the state will not continue to make payments to nursing homes which do not provide services adequate in view of the medical needs of each of its patients.

We cannot, however, ignore the practical difficulties which may flow from a ruling that a nursing home that accepts petitioner must provide him with personal attendants. ■ Since a nursing home is not a common carrier or a public utility, it is presently under no compulsion to accept a patient. (*California Assn. of Nursing Homes etc., Inc.* v. *Williams* (1970)

4 Cal.App.3d 800, 817 [84 Cal.Rptr. 590, 85 Cal.Rptr. 735].) Consequently, if Medi-Cal payments to nursing homes do not suffice to pay for petitioner's attendants, the practical effect of insisting that any nursing home that accepts him must provide such attendants may be that no nursing home will accept him.

We inquire, therefore, into the basis for payments to nursing homes under the Medi-Cal regulations. The parties assume that such payments are governed by title 22 California Administrative Code section 51511,[2] which provides that:

"(a) Reimbursement to nursing and convalescent homes shall be made in accordance with the Schedule of Maximum Allowances, Section II, Part C, Long-Term Care Facilities, which is in effect at the time nursing and convalescent home services are provided.

"(b) The per diem rate paid under this section shall not exceed $14.00, except that the director may negotiate all-inclusive per diem rates which provide for additional medically indicated covered services and provided that such negotiated rates do not increase over-all program costs."

The parties agree that the specified per diem of $14 will not pay for the nursing services that petitioner requires. Section 51511, however, permits the director *to negotiate a higher per diem rate* if by so doing he does not increase overall program costs. Having determined that petitioner is entitled to individual nursing care, we do not believe that a rate sufficient to compensate the additional attendants at a nursing home would increase overall costs. If no nursing home would accept petitioner the only alternative would be hospitalization at even greater expense.[3] Hospitalization, whether with special duty nurses or in intensive care, obviously would cost far more than the approximately $33 a day required to provide petitioner with special attendants at a nursing home.

Respondent contends that petitioner does not qualify for hospitalization because his condition cannot be successfully treated. ■ Hospital "treatment," however, is not limited to the curing of a disease; persons with incurable diseases such as petitioner are often hospitalized to facili-

---

[2]Briefs of both parties apparently overlook that *California Assn. of Nursing Homes etc., Inc.* v. *Williams* (1970) 4 Cal.App.3d 800 [84 Cal.Rptr. 590, 85 Cal.Rptr. 735], held regulation 51511 invalid. See *infra* at pages 8-9.

[3]Medi-Cal regulations provide for home nursing care only on part-time or intermittent basis. (Cal. Admin. Code, tit. 22, §§ 51219, 51337.) Petitioner can also obtain a grant to pay for attendants under the program for Aid to the Needy Disabled, but this grant is limited to $300 monthly. (Welf. & Inst. Code, § 13931), an amount insufficient to pay for the care petitioner requires.

tate procedures which will alleviate their distress and prolong their lives. ■ The Medi-Cal regulations do not limit hospitalization to cases of curable illnesses, but provide that the need for hospital care be determined "in accordance with the usual standards of medical practice in the community" (Cal. Admin. Code, tit. 22, § 51110). If petitioner could survive only with hospitalization, we are confident that the medical standards of the community would sanction it. Once hospitalized, petitioner could receive the individualized nursing care required either through placement in an intensive care unit[4] or through authorization under California Administrative Code, title 22, section 51339.[5]

■ To summarize the present regulations: (1) If petitioner is accepted by a nursing home, that institution must provide the *individualized* nursing care he requires (Cal. Admin. Code, tit. 22, § 51215); (2) if he is not accepted at a nursing home, he is entitled to the more expensive hospitalization, and at the hospital will receive the required care (see Cal. Admin. Code, tit. 22, §§ 51110, 51339); (3) to facilitate petitioner's acceptance by a nursing home, respondent can negotiate a per diem rate to compensate the institution for the additional nursing services petitioner requires (Cal. Admin. Code, tit. 22, § 51511). We therefore conclude that the director erred in his determination that existing regulations provide no means by which petitioner can obtain the needed individualized nursing care.

We have not overlooked the fact that the Court of Appeal has declared regulation 51511, which has been referred to above, to be invalid but we note that the regulation has in any event been continued in effect by stipu-

---

[4]Ordinary intensive care procedures might need modification to reduce light, noise, or activity which might precipitate petitioner's seizures.

[5]California Administrative Code, title 22, section 51339 states that "(a) Special duty nursing services by a registered nurse or by a licensed vocational nurse in a hospital [is covered] under the following circumstances: (1) when the service is provided for short-term acute care, and (2) when the attending physician prescribes the service on the basis of documented need, in selected severe cases when an intensive care unit is not available. (b) Special duty nursing services beyond five calendar days during any one hospital stay require prior authorization."

We take it from the wording of this regulation that a patient placed in an intensive care unit receives full-time nursing and monitoring as a matter of course, and that special duty nursing under section 51339 is intended only for cases "when an intensive care unit is not available." If no intensive care unit were available for petitioner, his right to special duty nursing under this section would depend on whether that service could be defined as "short-term acute care." Although petitioner needs nursing on a permanent basis, provision of such care until an intensive care unit became available, or until a suitable per diem rate were negotiated with a nursing home, could be termed "short-term" care. "Acute care" is defined by regulation 51110 as simply that care provided by a certified and licensed hospital to its patients; it does not relate to whether a physician would describe petitioner's condition as "acute" or "chronic."

lation and court order. In *California Assn. of Nursing Homes etc., Inc.* v. *Williams* (1970) 4 Cal.App.3d 800 [84 Cal.Rptr. 590, 85 Cal.Rptr. 735], the Court of Appeal stated that respondent adopted that regulation without complying with the provisions of the Administrative Procedure Act on notice, hearing, and preparation of an evidentiary record (Gov. Code, §§ 11423-11425, 11440), and concluded that "the administrator has as yet failed to comply with the statutory mandate to adopt a regulation establishing rates of payment for nursing homes services." (4 Cal.App.3d at p. 816). The Court of Appeal then directed the superior court to issue a mandate to require the director to adopt a new regulation, following proper notice and hearing, which will establish rates both prospectively and retroactively to the inception of Medi-Cal in 1966.

Respondent has begun hearings, but has not yet issued a new regulation. In the meantime, the parties to *California Assn. of Nursing Homes etc., Inc.* v. *Williams* stipulated, and the superior court ordered, that payments may continue under the provisions of regulation 51511, but without prejudice to the rights of the parties to take such legal action as they deem appropriate. Thus at present the nursing home that accepts petitioner may claim payment under section 51511 as provided in the superior court stipulation and judgment, and seek to negotiate with the respondent for higher per diem rates, or may pursue any other appropriate legal remedy.

The record clearly shows that respondent did not formulate the present regulations with petitioner's needs and disability in mind; nor are we certain that these regulations, even assuming their validity, establish the most efficacious way of providing the needed services for petitioner. For example, regulation 51215 requires the nursing home to employ sufficient attendants to meet a patient's needs; yet it may well be more efficient for the respondent to employ the attendants directly, or give petitioner a grant sufficient to enable petitioner to hire them. Regulation 51511, providing compensation to nursing homes at rates which may discourage such institutions from accepting petitioner, could result in petitioner's unnecessary hospitalization at much greater taxpayer expense.

Since respondent is in the process of holding hearings and formulating new regulations, we assume that the new regulations, taking account of the severe predicament facing victims of myoclonic epilepsy, will provide for the needed assistance in the manner that respondent finds to be the most efficient and least costly. Pending the issuance of the new regulations, respondent has adequate means under present statutes and regulations to provide petitioner with the needed care.

We turn finally to the matter of the specific judgment rendered by the

superior court.[6] We agree with paragraphs one, three, and five of the trial court judgment, which paragraphs vacate the decision of the director denying petitioner individualized nursing care, and award attorney's fees and costs. Paragraph two of that judgment, which held that the director's decision violated state statutes and denied petitioner the equal protection of the laws, is unnecessary to that judgment; it should be deleted. Paragraph four remands this cause to the director and requires him to proceed in conformity with the superior court's findings, conclusions and judgment. Those findings and conclusions, however, contain unnecessary language holding the director's actions unconstitutional. The findings and conclusions also improperly imply that respondent should provide petitioner with attendants, but the Medi-Cal regulations made it clear that the institution in which petitioner resides must supply the attendants with the department's role limited to compensating that institution.

In conclusion, despite the declared legislative intent to meet the health needs of recipients of public assistance whenever feasible, and despite the absence of any reason to believe aid to petitioner unfeasible, petitioner faces the horrible fate of being consigned to death because his unique disease does not fit within any of the pigeon holes of the Medi-Cal regulations. We have analyzed these regulations in the hope of finding a way to prevent this result, and have concluded that although the regulations were not

[6]The superior court judgment reads in part as follows:

"IT IS ORDERED, ADJUDGED AND DECREED that the Respondent shall vacate and void its decision dated December 31, 1969, wherein he purported to deny personal and individual nursing care under the State Medi-Cal program covering not less than 15 hours per day of such nursing care; and it is

"FURTHER ORDERED, ADJUDGED AND DECREED that said order providing such denial to this Petitioner was and is void and unlawful under the Statutes of the State of California and denies to this Petitioner the equal protection of the law in the administration of said Medi-Cal program, as guaranteed to him by the Constitution of the State of California and the Constitution of the United States of America; and it is

"FURTHER ORDERED, ADJUDGED AND DECREED that the Petitioner shall have and recover from the Respondent for and on account of attorneys' fees reasonably incurred, and under authority of Section 10962 of the Welfare and Institutions Code, the sum of $500.00; and it is

"FURTHER ORDERED, ADJUDGED AND DECREED that the said order of the Respondent dated December 31, 1969, shall be vacated and voided by him and that a Peremptory Writ of Mandate shall issue herein commanding the Respondent Director of Health Care Services of the State of California to set aside his said decision and order dated December 31, 1969, and that this said matter be remanded to Respondent to conform his actions in light of this Court's Findings of Fact and Conclusions of Law and this Judgment and to take any and all further actions specifically enjoined upon him by law, and that a Peremptory Writ shall issue hereon. It is

"FURTHER ORDERED, ADJUDGED AND DECREED that the Petitioner shall recover his costs herein against the Respondent, EARL W. BRIAN, M.D., Director of Health Care Services of the State of California, in the sum of $245.00."

promulgated with petitioner's requirements in mind, nonetheless they do provide a means by which petitioner's medical needs can be met and his life prolonged.

The judgment of the trial court is reversed, and the cause remanded to that court with directions to modify its findings of fact, conclusions of law, and judgment to conform to the views expressed in this opinion. The trial court shall retain jurisdiction over the cause after remand to the director to ensure that petitioner receives the necessary nursing care during the pendency of further administrative proceedings. Petitioner shall recover costs on appeal.

Wright, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.