PAMELA SUE CLARK, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 9633

January 12, 1979                                    588 P.2d 1027

*Morgan D. Harris,* Public Defender, and *George E. Franzen,* Deputy Public Defender, Clark County, for Appellant.

*Robert List,* Attorney General, Carson City; and *George E. Holt,* District Attorney, and *Ira H. Hecht,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

Following pleas of not guilty and not guilty by reason of insanity, and trial, a jury convicted appellant of attempted murder of her infant daughter, Heather Denise Clark. This appeal ensued.

Two issues confront us: (1) Was appellant properly found to be sane at the time of the commission of the offense? (2) Was

the jury correctly instructed on the presumption of sanity?[1] We answer both questions in the affirmative and uphold the conviction.

It is well settled in Nevada that insanity is an affirmative defense and that the accused is presumed to be sane absent proof of insanity by a preponderance of the evidence. Guynes v. State, 92 Nev. 693, 558 P.2d 626 (1976); Phillips v. State, 86 Nev. 720, 475 P.2d 671 (1970), cert. denied, 403 U.S. 940; Criswell v. State, 84 Nev. 459, 443 P.2d 552 (1968), cert. denied, 400 U.S. 946.

The jury heard evidence that on the evening of May 3, 1975, while her husband was at work, appellant wrapped her two week old baby in a blanket and abandoned it behind a clump of bushes off the side of a desert road in Clark County. Appellant then went to her husband and told him that the baby had been kidnapped. When the police arrived, appellant told them that she was putting the baby in its crib when someone grabbed her from behind, hit her on the head and knocked her unconscious. When she awakened, the baby was gone. The police were suspicious however, since there was no indication of a forced entry into appellant's mobile home and appellant was calm and unemotional. Further, there were no visible injuries resulting from the alleged attack.

Three days later, appellant was taken to Las Vegas police headquarters for further interrogation. There she admitted that she had abandoned the baby, believing that the child was probably dead. She explained that on the evening of May 3, 1975, she fell asleep after putting the baby to bed. She awakened a couple hours later and noticed the infant was not moving. Fearful that it was dead, she wrapped the baby in a blanket, drove out to the desert and there abandoned it. Appellant

---

[1]The court's Instruction No. 13 read in part:

"The jury may consider evidence of defendant's mental condition before and after the time of the commission of the offense. Such evidence is to be considered for the purpose of throwing light upon her mental condition as it was when the offense was committed.

\* \* \*

"However, if you find that the defendant was not capable of knowing or understanding the nature and quality of her act, you will find that she was legally insane; or, if you find that she was incapable of knowing or understanding that her act was wrong, you will find that she was legally insane.

"The defendant has the burden of proving her legal insanity by a preponderance of the evidence."

directed the police to where the child had been left. A helicopter spotted it and rushed the infant to Southern Nevada Memorial Hospital where it was treated essentially for dehydration.

At trial, two psychiatrists and one pyschologist testified that a severe post partum depression rendered appellant legally insane at the time of the crime. Cross-examination of the defense experts, however, developed that only the psychologist had examined appellant shortly after the events involved. The psychiatrists examined appellant over a year following the incident. Members of appellant's family, on the other hand, testified that her conduct immediately preceding the commission of the crime was normal and that she seemed happy and excited about having the baby. It was only after the events of May 3, 1975, that they noticed a change in her personality. After that date, she seemed despondent, unusually quiet and unemotional.

The M'Naughten rule has long been the test for criminal responsibility in the State of Nevada, Williams v. State, 85 Nev. 169, 451 P.2d 848 (1969); Sollars v. State, 73 Nev. 248, 316 P.2d 917 (1957); State v. Lewis, 20 Nev. 333, 22 P. 241 (1889), and here it was within the province of the jury to weigh the evidence, *Lewis, supra,* and determine whether appellant knew the nature and quality of her acts, had the capacity to determine right from wrong or knew whether she was doing wrong when she committed the crime. The jury, fulfilling its role as finder of fact, made a determination adverse to appellant, apparently concluding that appellant's conduct and declarations before and after the offense belied her insanity claim. There is substantial evidence supporting the jury's determination. See *Criswell, supra.*

Incidental to the presumption of sanity question, a subsidiary issue arises as to the continued vitality of the presumption confronted by controverting evidence. Appellant contends that the presumption evaporates with introduction of controverting evidence, while respondent argues that the presumption remains viable throughout the trial, absent sufficient countervailing proof. We agree with respondent's contention.

In Nevada insanity is not proved simply by raising a doubt as to whether sanity exists. State v. Bourdlais, 70 Nev. 233, 265 P.2d 761 (1954). The presumption is a disputable one (NRS 47.240, 47.250) and its effect in a criminal action is governed by NRS 47.230(2) which provides in part:

> [T]he existence of the presumed fact may be submitted to the jury if the basic facts are supported by substantial evidence, or are otherwise established, unless the evidence as a whole negatives the existence of the presumed fact.

Here, while expert testimony suggested that appellant was legally insane at the time of the crime, the trial court, in the exercise of its discretion properly concluded that such evidence as a whole did not negative the existence of the presumed fact sufficiently to remove the issue from jury consideration. Additionally, such testimony is not binding on the trier of fact, and the jury was entitled to believe or disbelieve the expert witnesses. State v. Nobel, 563 P.2d 1153 (N.M. 1977); see *Criswell, supra.* The expert opinions were largely based on information supplied to the psychiatrists by appellant over a year subsequent to the commission of the crime, which information was markedly sharp in contrast to statements given police more proximate to the infant's disappearance. Neither did the testimony of lay witnesses sufficiently negative the presumed fact.

Appellant faults the State's failure to present rebuttal witnesses. She contends that the "presumption of sanity" is dispelled once evidence of insanity is introduced. Appellant misconceives the nature of the insanity defense. In this State, sanity is not considered an element of the offense which must be pleaded and proved by the prosecutor. *Cf.* In re Winship, 397 U.S. 358 (1970); Mullaney v. Wilbur, 421 U.S. 684 (1975). Moreover, the conflicting statements of appellant coupled with expert testimony premised on information supplied by appellant over a year later cannot be said to be uncontradicted evidence. The jury concluded that the evidence produced as a whole was inadequate to overcome by a preponderance of evidence the presumption of sanity. Appellant cites In re Dennis, 335 P.2d 657 (Cal. 1959) as controlling. That case is clearly distinguishable. There the disputable presumption of sanity was overcome by a preponderance of uncontradicted evidence. The defendant had been institutionalized on several occasions prior to the commission of the crime compelling the court to conclude that:

> [p]roof that defendant was afflicted with a permanent insanity, as distinguished from a temporary or transient insanity, prior to the commission of the crime charged will, however, dispel the presumption of sanity and raise a presumption that his insanity continued to exist until the time of the commission of the crime. *Id.* at 661.

In State v. King, 375 S.W.2d 34 (Mo. 1964), although five witnesses testified to the defendant's lack of mental capacity and the state offered no evidence on that subject, the court held that the verdict of guilty is not contrary to the evidence since the burden was on the defendant to prove insanity by a preponderance of the evidence, the issue was a jury question, and the jury, as in the instant case, had a right to disbelieve the defendant's witnesses, which they obviously did. Accord State v. Sands, 499 P.2d 821 (Ore.App. 1972); Gibson v. State, 197 N.W.2d 813 (Wis. 1972).

Here, appellant alleged temporary, not permanent, insanity and consequently the jury found her evidence, whether controverted or uncontroverted (see Annot., 62 ALR2d § 7 at 1191), was nevertheless insufficient to dispel the presumption.

The verdict is supported by substantial evidence and the jury was properly instructed regarding the burden and sufficiency of proof necessary to establish the defense of insanity.

We find no error and affirm.

Mowbray, C. J., and Thompson, Gunderson, and Batjer, JJ., concur.