**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Viron SWINGLER, Defendant-Appellant.**

**No. 43156.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 2, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
March 19, 1982.

Application to Transfer Denied
May 17, 1982.

Leonard W. Buckley, Jr., St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GUNN, Judge.

Defendant was convicted of manslaughter. His appeal raises the following points of alleged trial court error: (1) instructing down on manslaughter under a first degree (felony) murder charge; (2) failing to declare a mistrial on a witness' reference to a "prior case" involving defendant; (3) use of a court-called witness; (4) failing to suppress statements made without *Miranda* warnings; (5) admitting inculpatory statements obtained as a result of alleged unlawful interrogation. We affirm.

A rather brisk marijuana trade was conducted at the Wraggs' family home in north St. Louis. On a January midevening, defendant was observed upon and about the Wraggs' premises and even presented himself at the front door. Commotion from individuals in the gangway outside the Wraggs' home caused the inhabitants concern, and a member of the family—Stephen Parker—was summoned as additional fortification against a breakin.

Sales of marijuana continued after Parker's arrival. However, the illicit business transactions were abruptly interrupted by two shotgun blasts fired through a window into the Wraggs' living quarters. Several people inside were struck by shotgun pellets, including four year old Cedric Draine who died as a result. Parker retaliated by firing two shots from a .22 caliber rifle at those outside. Defendant was felled by one shot to his neck, but he was able to arise and flee to a friend's nearby home.

Defendant was later taken to a hospital for treatment of his wound. Police officer Robert Outtz, as part of a routine investigation of a report of a gunshot wound, interviewed defendant at the hospital. Defendant related that he had been shot from a parked auto by one of four "dudes" whom he had encountered while returning home from a high school dance. Officer Outtz related this report to the Homicide Division, and two detectives visited defendant at the hospital in connection with their investigation of the Draine killing. This time defendant was given his full *Miranda* warnings. Again, defendant repeated that he had been shot by some individuals in a parked car after leaving a school dance. Released from the hospital, defendant was arrested, advised again of his *Miranda* rights and interrogated further. Stating that he did not want a lawyer, defendant told police that on the night of the killing he and two friends had planned to rob the Wraggs. One friend had a shotgun; defendant was armed with a .22 rifle. While defendant had gone to the front of the house, his companions went to the rear. On hearing gunfire, defendant had scurried towards the back of the Wraggs' house and in so doing was shot in the neck by gunfire from within.

At trial, defendant testified. His version of the events was that he had gone to the Wraggs' to buy dope, heard shots, and as he ran away was shot in the neck. He acknowledged that he had initially prevaricated to police about having been shot while returning from a school dance. He denied that he had a weapon at the Wraggs' or intended to participate in a robbery.

The jury was instructed on first degree murder in attempted robbery and on manslaughter. The jury's verdict was a finding of guilt as to manslaughter, leading to defendant's first two-pronged point on appeal: that the submission of manslaughter as a lesser included offense of first degree murder was erroneous; that there was insuffi-

cient evidence to support a manslaughter conviction.

Defendant relies on *State v. Handley*, 585 S.W.2d 458 (Mo. banc 1979), to assert that inasmuch as each contains different elements, manslaughter is not a lesser included offense of first degree murder. Hence, so the argument proceeds, submission of manslaughter is erroneous when only first degree murder is charged. However, this aspect of *Handley* was overruled in *State v. Wilkerson*, 616 S.W.2d 829, 832–33 (Mo. banc 1981). The legislature may specifically denominate one offense as a lesser offense of another so that a charge of the greater offense will support instruction on and conviction of the inferior offense without denying the accused his constitutional right to be informed of the charge against him. *Id.*; § 556.046.1(2), RSMo 1978. Manslaughter is a lesser offense of first degree murder by denomination, and the trial court properly instructed the jury in that regard. *Rogers v. State*, 625 S.W.2d 185, No. 44206 (Mo.App.1981); § 565.003, RSMo 1978; § 565.005, RSMo 1978; Notes on Use, MAI–CR 2d 15.00(3)(e).

Defendant also maintains that there was insufficient evidence to support the conviction of manslaughter, as there was no evidence that he acted with the purpose of committing that offense.[1]

In our review of the sufficiency of evidence we are guided by the fundamental precepts that we are to consider the evidence in the light most favorable to the state, accepting as true all evidence and inferences therefrom that tend to support the verdict and disregarding all contrary evidence and inferences. *State v. Williams*, 623 S.W.2d 552, 553 (Mo.1981); *State v. Turner*, 623 S.W.2d 4, 6 (Mo. banc 1981); *State v. Brooks*, 618 S.W.2d 22, 23 (Mo. banc 1981).

The following legal maxims are also apropos to the issues raised. To prove a conviction there must be evidence directly

---

1. The manslaughter instruction submitted adhered to MAI–CR 2d 2.12 and MAI–CR 2d 15.18 and instructed the jury to find defendant

guilty of manslaughter if it did not find him guilty of first degree murder, together with the requisite findings of fact.

associating defendant with the commission of the crime, showing that he affirmatively participated in the criminal undertaking. It is unnecessary, however, to establish that defendant personally committed each element of the crime, as he is liable for his cohorts' conduct. *State v. Strickland,* 609 S.W.2d 392, 395 (Mo. banc 1980); *State v. Singleton,* 602 S.W.2d 3, 8 (Mo.App.1980); *State v. Kennedy,* 596 S.W.2d 766, 769 (Mo. App.1980). To be guilty as an aider and abetter of manslaughter, the accused must have knowingly and intentionally aided and abetted the assault that resulted in the victim's death. *State v. White,* 622 S.W.2d 939, 945 (Mo. banc 1981); *State v. Handley,* 585 S.W.2d at 463, *rev'd on other grounds, State v. Wilkerson,* 616 S.W.2d 829 (Mo. banc 1981); *State v. Grebe,* 461 S.W.2d 265, 268 (Mo. banc 1970). The essence of the crime of manslaughter is the killing of a person. *State v. McCall,* 602 S.W.2d 702, 708 (Mo.App.1980).

In this case, the jury could find that defendant, with others, approached the Wragg residence bearing arms, intending to commit an assault, and, in the process, one of defendant's companions fired a shotgun into the home with fatal result for a four year old child. The evidence was sufficient to support the manslaughter conviction.

During trial, one of the police officers testifying for the state related his interview with defendant at the hospital and remarked that defendant had "stated that while being confined in the hospital the nurse at the hospital came into his room and stated a female who identified herself as a public defender who was representing him on a prior case told him not to—." Defendant's counsel interrupted with a request for a mistrial, which the trial court denied. However, the jury was instructed to disregard the statement. Defendant asserts that the "prior case" remark constituted an impermissible reference to a separate and distinct crime for which he was not at that time being tried.

The trial court did not err in refusing to grant a mistrial on the basis of this statement. The comment did not constitute clear evidence that defendant "has committed, or has been accused of, charged with, convicted of, or been definitely associated with, another crime or crimes." *State v. Ross,* 606 S.W.2d 416, 420 (Mo.App.1980), quoting *State v. Jones,* 523 S.W.2d 152, 155 (Mo.App.1975). *See also, State v. Nash,* 621 S.W.2d 319, 323 (Mo.App.1981). The comment was unsolicited, and the matter was not referred to again throughout the trial. *State v. Harris,* 622 S.W.2d 330, 335–36 (Mo.App.1981); *State v. Cotton,* 621 S.W.2d 296, 298–99 (Mo.App.1981). The trial court's prompt instruction to the jury to disregard the statement cured any possible prejudice to defendant. *State v. Garrett,* 622 S.W.2d 387, 390 (Mo.App.1981). Thus, there was no abuse of discretion in refusing to grant the drastic, extraordinary remedy of a mistrial. *State v. Ford,* 623 S.W.2d 574, 576 (Mo.App.1981); *State v. Harris,* 622 S.W.2d at 335–36; *State v. Nash,* 621 S.W.2d at 324.

The next complaint concerns the trial court's calling as its witness Anthony Turner, one of defendant's companions and a participant in the robbery scheme. In proceedings outside the jury's hearing, the state requested the court to call Turner as its witness principally on the ground that the state could not vouch for his credibility as he had been implicated in the criminal activity by defendant in a statement to detectives. Though the request was granted over defendant's objection, the record is clear that the jury could not know that Turner was called as the trial court's witness.[2]

---

2. Turner was the last witness to testify before the state rested. Prior to his taking the stand, the following discussion occurred:

> THE COURT: ... Call your next witness.
> MR. BROWN [Prosecutor]: May we approach the bench. (Off the record colloquy between court and counsels.)

> ANTHONY TURNER, being sworn by the deputy clerk, testified.
> The state then proceeded with its direct examination of Turner.

The Missouri Supreme Court has recognized the power of the trial court to call a witness as its own. Guidelines for the exercise of this authority are set forth in *State v. Davis*, 566 S.W.2d 437 (Mo. banc 1978). The practice, of course, is undesirable and should be used sparingly and only to prevent a miscarriage of justice. The party desiring the witness to testify must show why it cannot vouch for the witness' veracity and that the testimony relates to issues in the case. The decision to call a witness as a court's witness rests in the sound discretion of the trial court. *State v. Davis*, 566 S.W.2d at 447–48. *See also Smith v. United States*, 331 F.2d 265, 273–75 (8th Cir.), *cert. denied*, 379 U.S. 824, 85 S.Ct. 49, 13 L.Ed.2d 34 (1964).

Defendant appears to urge restriction of this practice to the facts of *Davis*, in which the court-called witness had pleaded guilty to the crime for which defendant was on trial, making it difficult for the prosecutor to vouch for his credibility. Courts in other states, however, have not so confined the practice. *See, e.g., People v. Dennis*, 47 Ill.2d 120, 265 N.E.2d 385 (1970), *cert. denied*, 403 U.S. 907, 91 S.Ct. 2212, 29 L.Ed.2d 683 (1971) (court-called witness was close friend of defendant and alibi witness for defendant on a pending charge); *Patterson v. State*, 275 Md. 563, 342 A.2d 660 (1975) (court-called witness was defendant's mother, who had given conflicting stories to investigating police and grand jury). *See also* Annot., 67 A.L.R.2d 538 (1959). By indicating that he had been implicated in the crime with which defendant was charged, the state showed its inability to vouch for Turner's veracity and that his testimony would be related to the issues at hand.

Defense counsel argues that Turner's testimony, which was consistent with his testimony before the grand jury, conformed to the state's expectations and that the state, therefore, could have vouched for Turner's veracity and called him as its own witness. As the state observes, however, lawyers customarily have expectations as to a witness' probable testimony before he takes the stand. The state's inability to vouch for Turner's veracity stemmed from Turner's possible participation in the crime, not from any difficulties in predicting the content of his testimony. We also observe that Turner's testimony did not implicate defendant in any manner, and was, in fact, beneficial to him.

Further, it is important to note that the potential dangers in calling a witness as the court's witness—that of implying partiality on the part of the judge and unduly emphasizing the testimony of the court's witness in the minds of the jurors—were not present here, as the jury was unaware that Turner testified as a court's witness. There was no abuse of trial court discretion in its calling of Turner as its witness.

Finally, on the basis of alleged unlawful interrogation, defendant argues the statements made by him to police officer Robert Outtz at the hospital and subsequent statements to detectives should have been suppressed.

Defendant had been taken to the hospital for treatment of his neck wound. Officer Outtz first interviewed him at the hospital as part of a routine police procedure concerning all gunshot victims. While being treated defendant was advised by Officer Outtz that a routine police report was being made. Defendant was not under arrest; consequently, Officer Outtz gave no *Miranda* warnings before inquiring as to the source of defendant's wound. The information obtained from defendant as to his being shot on the way home from a school dance was relayed to St. Louis detectives who were investigating the Draine killing. Prior to any further interrogation of him, these detectives advised defendant of his *Miranda* rights. In the followup investigation, defendant repeated the school dance story but ultimately acknowledged his part in the planned robbery, including his being stationed in front of the Wraggs' home with a rifle. Defendant made his state-

ments to detectives after *Miranda* rights had been offered and waived.[3]

 *Miranda* warnings must be given prior to custodial interrogation, which is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966). But several factors lead us to conclude that defendant was not in custody when interrogated by Officer Outtz. The nature of the questioning was investigatory, not accusatorial. Defendant was interviewed as a victim, not as a suspect; the investigation of the shooting at the Wraggs' residence had not focused on him. *State v. Overstreet*, 551 S.W.2d 621, 628 (Mo. banc 1977); *State v. Hayes*, 597 S.W.2d 242, 246 (Mo. App.1980). Certainly, Officer Outtz did not question defendant at a point where, "as the result of the general investigation and information received from other sources, it became reasonably apparent that further interrogation could reasonably cause the officers to believe appellant had some involvement in the [crime]." *State v. Baskerville*, 616 S.W.2d 839, 843 (Mo.1981); *State v. Pierce*, 556 S.W.2d 216, 217–18 (Mo.App. 1977). *Miranda* warnings under the circumstances were unnecessary, and defendant's statement to Officer Outtz was properly admitted, along with his subsequent statements to detectives.

Judgment affirmed.

DOWD, P. J., and SIMON, J., concur.

---

3. Defendant asserts that he was given no warnings; police said they did. This issue was resolved in the state's favor. *State v. Crews*, 585 S.W.2d 131, 133 (Mo.App.1979).