JAMES ALLEN, Jr., Appellant, v. THE STATE OF
NEVADA, Respondent.

No. 13707

June 14, 1983                                665 P.2d 238

*Frank J. Cremen,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Robert J.
Miller,* District Attorney, and *James N. Tufteland,* Deputy
District Attorney, Clark County, for Respondent.

# OPINION

*Per Curiam:*

A jury convicted appellant of first degree murder for the shooting of Tony Lynn Sylvester during the course of a burglary at the Sylvester home. The same jury also sentenced appellant to death. For reasons hereinafter set forth, we affirm conviction, but reverse the sentence and remand the case for re-sentencing.

Appellant first contends that his trial was seriously infected with error by the admission of expert medical testimony. During appellant's trial, Richard Renner, the senior criminalist for the Las Vegas Metropolitan Police Department, testified that he had made a comparison of a piece of flesh found at the crime scene with a wound on appellant's arm. Renner concluded that he was unable to determine if the two were similar because there was too much scar tissue formed on appellant's wound. Thereafter, Dr. James Clarke, a pathology specialist, also made a comparison and he concluded that the piece of skin was very similar to the wound. Appellant insists that the district court erred by allowing the latter testimony in to evidence on the grounds that it was speculative and contradictory. We disagree.

Any trial aid, including expert testimony, which assists a jury in ascertaining relevant truths should be admissible. Lightenburger v. Gordon, 81 Nev. 553, 407 P.2d 728 (1965). The assistance of expert testimony, however, should be in an area foreign to the jury's knowledge. Dawson v. State, 84 Nev. 260, 439 P.2d 472 (1968). Unless the admission of expert testimony in the lower court was a clear abuse of the trial judge's discretion, this Court will not disturb the lower court's determinations. Stickelman v. Moroni, 97 Nev. 405, 632 P.2d 1159 (1981); Provence v. Cunningham, 95 Nev. 4, 588 P.2d 1020 (1979). Here, Dr. Clarke's testimony was properly admitted because it dealt with an area outside the jury's knowledge and conduced toward aiding the jury in reaching its verdict. The fact that there was conflicting testimony between Dr. Clarke and Richard Renner does not render the former's opinion inadmissible. It is a well settled rule in this state that whenever conflicting testimony is presented, it is for the jury to determine what weight and credibility to give to that testimony. Henderson v. State, 95 Nev. 324, 594 P.2d 712 (1979); Stewart v. State, 94 Nev. 378, 580 P.2d 473 (1978). Here, the jury heard the testimony of both Renner and Clarke and was free to

believe whichever witness it found most credible. *See* Dearman v. State, 93 Nev. 364, 566 P.2d 407 (1977). Expert testimony is not binding on the trier of fact; jurors can either accept or reject the testimony as they see fit. Clark v. State, 95 Nev. 24, 588 P.2d 1027 (1979). There was no abuse of discretion by the trial judge in admitting the expert testimony.

■■■■■■■

At the penalty hearing, the state introduced several items pertaining to appellant's character in support of the death penalty. Appellant contends that the district court erred by allowing these items to be introduced at the penalty hearing because they did not fit within any class of aggravating circumstances as outlined in NRS 200.033. While it is true that the items objected to by appellant are not aggravating circumstances, appellant fails to recognize the import of NRS 175.552 which provides that during a penalty hearing "evidence may be presented concerning aggravating and mitigating circumstances relative to the offense, defendant or victim *and on any other matter which the court deems relevant to sentence, whether or not the evidence is ordinarily admissible.*" (Emphasis supplied.) This statute clearly indicates and we so hold that NRS 175.552 is not limited to those nine aggravating circumstances outlined in NRS 200.033. Furthermore, the United States Supreme Court in Woodson v. North Carolina, 428 U.S. 280 (1976), ruled that the relevant factors to be considered by a jury in imposing a penalty for a capital crime are "the character and record of the individual offender and the circumstances of the particular offense." Therefore we conclude that the district court did not err in admitting evidence of the appellant's character even though such evidence did not consist of aggravating circumstances.

Notwithstanding our conclusion that the district court may appropriately consider character evidence outside the nine areas of aggravating circumstances, we feel constrained to provide cautionary direction and admonition concerning the subject of such evidence in future penalty phase dispositions.

■■■■■■

In the instant case, the jurors were informed, *inter alia,* that, at a time when appellant was on probation for another offense, he had moved his residence without permission and had failed to hold a job. Additionally, a jail employee who had no personal knowledge of any specific infraction, testified from jail records that appellant had presented disciplinary problems while awaiting trial. In our view, a decision to execute a human being should not be influenced by such dubious, tenuous "evidence."

Arguably, the "character evidence" admitted in this case should have been excluded as a matter of law because its probative value is clearly "outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury." NRS 48.035(1). Similarly, as a matter of law, such "evidence" arguably should have been excluded because its probative value is clearly "outweighed by undue delay [and] waste of time." NRS 48.035(2). In any event, it is apparent that the trial court had, and still has, discretion to exclude such evidence. NRS 48.035.

In our view, therefore, since a new penalty hearing will be required as specified hereafter, the district court should be most cautious about admitting such "character evidence." Character evidence of this kind would be inadmissible to establish guilt, *see* NRS 48.045, and as stated above, it is of questionable value in establishing an appropriate penalty.

■■■■■■ ■

Appellant next contends that his Fifth Amendment right not to be twice placed in jeopardy for the same offense was violated. Appellant cites Whalen v. United States, 445 U.S. 684 (1980), in support of his position. We conclude that *Whalen* is not applicable to the instant case.

*Whalen* involved the interpretation of federal law and is very limited in scope. There, the defendant was convicted of raping and killing the victim in the perpetration of the rape. The defendant claimed that his Fifth Amendment right had been violated since he had been convicted of both the rape and the murder. The high court agreed; however, the court specifically noted that its opinion was limited to the statutory interpretation of the laws of the District of Columbia which are enacted by Congress. The court then found that the laws of the District of Columbia provide that, in cases such as this, the rape merges into the murder and the defendant can only be convicted of the latter crime.

In the instant case, appellant was convicted of burglary and murder. In Nevada our statutes allow multiple punishment whenever a person in the commission of a burglary commits another crime.[1] Since our statutory scheme is different from that of the District of Columbia, *Whalen* does not apply. *See* Kirkland v. State, 95 Nev. 83, 590 P.2d 156 (1979). Therefore, we conclude appellant's contention is without merit.

Finally, during appellant's trial, Adrian LeFear was called as

---

[1]NRS 205.070 provides:

Every person who, in the commission of a burglary, shall commit any other crime, shall be punished therefor as well as for the burglary, and may be prosecuted for each crime separately.

a witness by the state. LeFear was an acquaintance of the appellant and according to LeFear, appellant had admitted to killing a white man during the course of a burglary. During the direct examination of LeFear, he testified as follows:

> Q. Now, at this time did James Allen, Jr., say anything about having been involved in the commission of a crime?
> A. Yes. He said he had—he came over in the morning and said he had killed this peckerwood.[2]
>
> . . .
> Q. What was said that time at the 7-Eleven Store about this killing?
> A. He said about the same thing, you know, he had killed this peckerwood, you know, and he was saying that he had—
> Q. Could you repeat that last part?
> A. He said he had killed a nigger the same way he did him.

At this point in LeFear's testimony, defense counsel immediately objected and asked for a hearing outside the presence of the jury. At the hearing, counsel asked for a mistrial on the ground that this testimony consisted of prejudicial evidence of another crime and, therefore, was inadmissible. The district court denied appellant's motion for a mistrial, but strongly admonished the jury to disregard the testimony. Appellant contends that the admonition to the jury is not a sufficient remedy and that the district court erred by refusing to grant a mistrial. Appellant's contention poses a dichotomous issue requiring resolution through application of a dual standard of review.

In respect of the guilt phase of appellant's trial, the applicable standard of review requires appellant to prove that the inadvertent statement was so prejudicial as to be unsusceptible to neutralizing by an admonition to the jury. Here, appellant concedes that there was only one unsolicited remark made by LeFear which took both the prosecution and defense by surprise. Furthermore, the trial court immediately admonished the jury to disregard the inference of any additional criminal activity on the part of appellant. Under circumstances such as these, we have held that the trial court is justified in denying a motion for a mistrial when·a witness inadvertently makes reference to other unrelated criminal activity as long as the testimony is not

---

[2]The word "peckerwood" is a term used by certain elements in the area to refer to a white man.

clearly and enduringly prejudicial and has not been solicited by the prosecution. Where, as here, evidence of guilt is convincing, an admonition to the jury defuses the error. Stickney v. State, 93 Nev. 285, 564 P.2d 604 (1977); Allen v. State, 91 Nev. 78, 530 P.2d 1195 (1975); Ennis v. State, 91 Nev. 530, 539 P.2d 114 (1975). Therefore, we conclude that there was no prejudicial error in the guilt phase of appellant's trial.

After the penalty phase of the trial, the same jury that convicted appellant sentenced him to death. Where a death sentence is pronounced by the convicting jury who heard the inadvertent testimony, our standard of review requires appellant only to demonstrate the possibility that the sentence was influenced by such testimony notwithstanding the court's admonition to the jury. We are perceptually unable to avoid the possibility that the jury, at the time of the penalty hearing, may have been prejudicially influenced by LeFear's testimony and under the false impression that appellant had in fact killed another individual.[3] Accordingly, we affirm appellant's conviction, but we reverse and remand for a new penalty hearing before a newly empaneled jury. *See* NRS 177.055.

---

[3]In the stricken testimony of LeFear, he originally stated that appellant "*had* killed a nigger" the same way he killed the victim in the instant case. However, during a hearing outside the presence of the jury, LeFear recanted his story that the appellant had killed another and stated that the appellant had told him he *would* kill another if he had to.