GEORGANNA KING, now Known as GEORGANNA LAGEN, and PAULA MARTINEAU, Appellants, *v.* THE STATE OF NEVADA, Respondent.

No. 18561

June 28, 1989                                          784 P.2d 942

[Rehearing denied December 28, 1989]

*Greenman, Goldberg & Raby,* Las Vegas, for Appellant Lagen.

*Thomas D. Beatty,* Las Vegas, for Appellant Martineau.

*Brian McKay,* Attorney General, and *John Cary,* Deputy Attorney General, Carson City, for Respondent.

## OPINION

*Per Curiam:*

A grand jury returned an indictment charging appellants Georganna King, now known as Georganna Lagen, and Paula Martineau with murder, aiding and abetting murder, and child abuse and neglect. These charges arose out of the death of King's twenty-seven-month old daughter, Michelle. On July 19, 1984, Michelle suffered multiple head injuries while under appellants' care and custody. She died on July 23, 1984.

At trial, the prosecution's case against appellants rested primarily upon circumstantial evidence. A jury found both appellants guilty of involuntary manslaughter and felony child abuse. The trial court sentenced each of them to concurrent terms of twenty years for felony child abuse and six years for involuntary manslaughter. On appeal, King and Martineau claim numerous sources of error.

Appellants contend that the jury failed to follow the district

court's instructions requiring that guilt be established beyond a reasonable doubt. They argue that the evidence showed extensive disagreement among the medical experts as to what caused Michelle's coma and death. The experts' opinions ranged from that of appellants' expert, Dr. Petty, who testified that Michelle suffered a simple, unwitnessed fall with a blow to her head, to that of prosecution witness, Dr. Carlile, who opined that Michelle's injuries were due to a shaking and a deliberate blow. Thus, appellants submit that the diverse opinions created a reasonable doubt as to whether they committed a crime.

Whenever the parties present conflicting testimony, the jury must determine the weight and credibility to give to that testimony. Allen v. State, 99 Nev. 485, 487, 665 P.2d 238, 240 (1983). In *Allen,* we held that jurors can accept or reject expert testimony as they see fit. *Id.* at 488, 665 P.2d at 240. Therefore, accepting Dr. Carlile's opinions and the testimony of other experts with similar opinions, the jury had substantial evidence with which to find that Michelle's death was caused by the criminal act of another.

Appellants also claim that the prosecution introduced no evidence which would allow the jury to determine which appellant did the act that caused Michelle's death. They argue that if the jury could not determine which appellant performed the fatal act, both were entitled to acquittal.

The State responds that it was not necessary to determine which appellant committed the particular act which caused Michelle's death, even assuming that it was a single act. Michelle was in the custody of both appellants at the time of her injury. Moreover, assuming that only one of the appellants actually struck Michelle, the State maintains that the only possible inference from the evidence is that the other aided and abetted in causing the injury. Finally, the State contends that evidence in the record indicated that both failed to seek prompt medical care.

We agree with appellants that the evidence created a reasonable doubt whether both appellants were guilty of involuntary manslaughter. NRS 175.211(1).[1] However, our review of the record

---

[1]NRS 175.211(1) provides:

A reasonable doubt is one based on reason. It is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual and substantial, not mere possibility or speculation.

reveals sufficient evidence for a jury, acting reasonably, to find appellants guilty, beyond a reasonable doubt, of felony child abuse. *See* Wilkins v. State, 96 Nev. 367, 609 P.2d 309 (1980) (holding that the circumstantial evidence was sufficient to convince a jury, acting reasonably, that defendant was guilty, beyond a reasonable doubt, of second degree murder).

Nevada law defines involuntary manslaughter as "the killing of a human being, without any intent to do so, in the commission of an unlawful act, or a lawful act which probably might produce such a consequence in an unlawful manner." NRS 200.070. In order to find appellants guilty of involuntary manslaughter, beyond a reasonable doubt, the evidence must establish that each appellant committed acts resulting in Michelle's death, *see* Com. v. Colvin, 489 P.2d 1378 (Pa.Super.Ct. 1985) (statute prohibiting involuntary manslaughter requires that death be a result of defendant's act); *cf.* Earlywine v. Sheriff, 94 Nev. 100, 575 P.2d 599 (1978) (holding that an information charging defendant with involuntary manslaughter must specify the acts of criminal negligence upon which the State relies), or the evidence must demonstrate that one appellant knowingly and intentionally aided and abetted the other appellant in the act which resulted in death. State v. Swingler, 632 S.W.2d 267 (Mo.Ct.App. 1982); *cf.* Barren v. State, 99 Nev. 661, 669 P.2d 725 (1983) (holding that an indictment alleging that defendant aided and abetted commission of a crime must provide information as to the acts performed by defendant).

Appellants claim that they have no idea how Michelle's injury occurred. During police questioning, both maintained their innocence. At trial, the parties introduced no eyewitness testimony as to what happened to Michelle. King testified that she did not know what caused Michelle's injury. Martineau did not testify. Therefore, no evidence exists that both appellants committed the fatal act. Likewise, no evidence exists that one of the appellants aided and abetted the other in shaking Michelle or fracturing her skull. The fact that both of the appellants were in the home at the time of Michelle's injury does not suffice to prove one aided and abetted the other. Consequently, we reverse appellants' convictions for involuntary manslaughter.

▬▬▬▬

Nevada's child abuse statute encompasses acts of omission as well as acts of commission. NRS 200.508.[2] Other jurisdictions

---

[2]NRS 200.508(1) provides:
   1. Any adult person who:
    (a) Willfully causes a child who is less than 18 years of age to suffer unjustifiable physical pain or mental suffering as a result of abuse or

uphold convictions of parents who failed to immediately seek or attempt to obtain proper medical treatment after finding the child in need of medical attention. State v. Scott, 400 So.2d 627 (La. 1981); Priego v. State, 658 S.W.2d 655 (Tex.Ct.App. 1983).

In the instant case, both appellants were "responsible for the safety or welfare of [Michelle]."[3] NRS 200.508(1)(b). Further, Dr. Carlile testified that Michelle might have survived if brought to the hospital sooner. Consequently, appellants allowed Michelle to "suffer unjustifiable physical pain" when they delayed in obtaining medical treatment for her. *Id.* Therefore, sufficient evidence exists to convince a jury, acting reasonably, of appellants' guilt beyond a reasonable doubt of felony child abuse. *See* Wilkins v. State, 96 Nev. 367, 609 P.2d 309 (1980).

After further review of the record, we conclude that appellants' other contentions lack merit. Accordingly, we affirm the convictions for felony child abuse and reverse the convictions for involuntary manslaughter.

YOUNG, C. J., STEFFEN, SPRINGER and MOWBRAY, JJ., and ZENOFF, SR. J.,[4] concur.

---

neglect or to be placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect; or

(b) Is responsible for the safety or welfare of a child and who permits or allows that child to suffer unjustifiable physical pain or mental suffering as a result of abuse or neglect or to be placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect, is guilty of a gross misdemeanor unless a more severe penalty is prescribed by law for an act or omission which brings about the abuse, neglect or danger.

[3]Although appellants do not raise this issue on appeal, we note that the record provides sufficient evidence to prove that Martineau exercised care and control over Michelle. *See* State v. Healey, 562 S.W.2d 118 (Mo. Ct.App. 1978) (holding that evidence that defendant lived with the boy and his mother for over a year before the mistreatment occurred and voluntarily assumed the role of a parent was sufficient to prove that defendant had care and control of the child).

[4]THE HONORABLE DAVID ZENOFF, Senior Justice, participated in this appeal pursuant to this court's general order of assignment filed September 14, 1988.