Jimmy **NEUSCHAFER,**
Petitioner-Appellant,

v.

Harol **WHITLEY,** Warden, Nevada State Prison, and Brian McKay, Attorney General of the State of Nevada, Respondents-Appellees.

No. 86–1909.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 14, 1987.

Decided May 11, 1987.

N. Patrick Flanagan, III, Reno, Nev., for petitioner-appellant.

Brian Randall Hutchins, Carson City, Nev., for respondents-appellees.

Before CHAMBERS, KENNEDY and HALL, Circuit Judges.

KENNEDY, Circuit Judge:

The appellant Neuschafer seeks a writ of habeas corpus from the United States courts after the Nevada judicial system has reviewed and affirmed his conviction and sentence. *Neuschafer v. State*, 101 Nev. 331, 705 P.2d 609 (1985). Neuschafer killed a prison inmate and was convicted of first degree murder with aggravating circumstances as defined by Nevada law. He received the death sentence. Neuschafer's crime was committed while he was serving two life sentences for the rape and first degree murder of two young women. The United States District Court for the District of Nevada denied Neuschafer's petition for writ of habeas corpus, and after we heard oral argument on appeal from that decision, we issued an order of limited remand to the district court for further findings. *Neuschafer v. McKay*, 807 F.2d 839 (9th Cir.1987). The district court held an evidentiary hearing and made further specific findings of fact and conclusions of law, and we have reconsidered the appeal upon further oral argument. We now reject petitioner's constitutional arguments and affirm denial of the writ by the district court.

Neuschafer's first argument, and the one that led us to remand the case for further proceedings, is that the prosecution used a confession obtained in violation of the standards set forth in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). *Edwards* bars the use of any confession obtained after the suspect has requested a lawyer, unless the suspect has initiated the interview leading to his confession and has knowingly and intelligently waived his right to counsel before confessing. *Id.* at 484–85, 486 n. 9, 101 S.Ct. at 1884–85, 1885 n. 9.

As explained in our first opinion, the issue before us involves Neuschafer's statement on August 21, 1981, which was the third of three confessions or admissions that were introduced in evidence. 807 F.2d at 840; *see* 705 P.2d at 612. Before making the August 21 statement, Neuschafer had written two incriminating notes, which were admitted at trial and which can be characterized as confessions.

Still another statement, made after the notes were written but before the August 21 statement, was obtained in violation of the petitioner's *Miranda* rights. On August 18, officers Ricards and Forrest questioned Neuschafer in a maximum security unit of the prison. Despite Neuschafer's request for an attorney, the officers did not provide him with counsel. Instead, they continued the interview until they elicited an incriminating statement. This statement was not admitted in evidence.

On August 21, officers Ricards and Forrest, joined this time by officer Efford, again interviewed Neuschafer and obtained the incriminating statement here in issue. We remanded for further findings, noting that counsel was requested at the August 18 interview, so that the *Edwards* rule must have been satisfied before the statement from the August 21 interview could be admitted in evidence. The district court found that the August 21 interview was initiated by Neuschafer and that the confession was made after a waiver of the

right to counsel. Those findings are fully supported by the evidence.

The district court's findings were as follows:

> Sometime just prior to 8:15 p.m. on August 20, 1981, Petitioner handed a note to correctional officer Stahl who was on duty in Max Unit. Stahl in turn handed this note to correctional officer Glen Blomgren who, as senior correctional officer on duty, was in charge of the unit. Blomgren who was stationed in the security office of the unit, examined the note. Blomgren cannot recall verbatim the specific contents of the note, but he does remember that the note indicated Petitioner's great desire to see somebody in a "position of authority" to talk about why he was in the Max Unit. Blomgren also remembers that the note indicated an intimate knowledge of the murder weapon used, describing the material of which it was made and the way it was knotted. To Blomgren the note was "confessionary" and involved an inmate murder.[2]

> Blomgren took the note and proceeded to Petitioner's cell with the intent to determine the "importance" of it. When he arrived at Petitioner's cell, Petitioner told Blomgren that the Johnson death was not a suicide. He asked Blomgren if the note would get attention.

> Blomgren cannot recall the exact date of these occurrences regarding this particular note, but specifically confirms that the note was received around 8:15 p.m. The prison's daily log makes clear, however, that Petitioner's note requesting a meeting with the authorities was delivered to Stahl and Blomgren on August 20, 1981.

> After the discussion with Petitioner about the note, Blomgren notified the Shift Commander for the prison, Lt. Francis Smith. Lt. Smith (in his own handwriting) documented the receipt of the note in the daily log for that shift of the watch at the prison (Exhibit F):

> "8:15 P M Phone call complete in Max unit.[3] Also c/o Blomgren received a note from Inmate Neushafer (sic) which is being sent to investigations."

---

2 Officer Richards of the Investigation Division of NSP recalls the note as saying that Petitioner "wished somebody to clear up his trouble." There is no credible evidence to support Petitioner's present contention that the note sought an attorney to represent Petitioner.

3 This statement referred to a telephone call that had been arranged for another inmate, Hartman, by the chaplain and Lt. Smith. Exhibit E also mentions this telephone call. Exhibit E is the log which records movement of inmates, visitations to the unit, doctors calls, officers on duty and unusual incidents for Max Unit for August 20, 1981.

The preponderance of the evidence is that the note was then sent directly to the Investigation Division of the Prison and then on to the Carson City Sheriff's office, which (with the assistance of the Investigation Division) investigated major crimes at the prison at that time.

Sometime after the note reached the Carson City Sheriff, officer Ricards of the Investigation Division arranged for an interview between Petitioner and Detective Michael Efford of the Sheriff's office. Ricards had been told that Petitioner wanted to talk to the police. Ricards told Efford Petitioner had asked to talk to Efford. Efford was not told that Petitioner had previously been interviewed and requested an attorney.

At approximately 2:30 p.m., on August 21, 1981, Petitioner was taken from Max Unit to another area in the prison for an interview with Efford, Ricards and Ed Forrest. At the interview Efford read Petitioner his *Miranda* rights. Petitioner indicated he understood his rights and did not request an attorney. (See Exhibit B.) He proceeded to give another incriminating statement. This statement was read into the record at trial over objection of defense counsel.

Neuschafer's claim that he did not initiate the interview is refuted in the record by documentary evidence, by the testimony of officers Smith and Blomgren, and by inconsistent statements of Neuschafer in the remand hearing itself and at the criminal trial. The trial judge said also that Neuschafer's testimony was discredited by his

demeanor. Though we must sustain the findings of fact upon the mere conclusion that they were not clearly erroneous, we are led to say here that the evidence in support of the court's findings is compelling.

Based on the explicit findings of the district court, the conditions of *Edwards v. Arizona* were satisfied, and the August 21 confession was admissible. It is unnecessary for us to consider the issue of harmless error, although, as the dissent in our previous disposition makes clear, that alternative argument by the state of Nevada is far from insubstantial.

In our previous opinion, we did not address Neuschafer's other contentions, and we now turn to those matters. The jury found that one of the aggravating factors of the crime was that it was a murder which "involved torture, depravity of mind or the mutilation of the victim." Nev.Rev. Stat. § 200.033(8). Neuschafer contends this is an arbitrary standard, both as a general matter and in the particular circumstances of his case. We need not address this contention, however, for it would be of no avail to the petitioner. The jury found additional and specific aggravating factors which, under both Nevada law and controlling constitutional principles, justify imposition of the capital sentence.

The jury found, beyond any reasonable doubt, that the murder had been committed by a person under sentence of imprisonment, and that it had been committed by a person who was previously convicted of another murder, both of which are aggravating circumstances under Nevada law. Nev.Rev.Stat. § 200.033(1), (2). The jury found no mitigating factors. In the absence of mitigating factors, the presence of either of the aggravating circumstances, standing alone, would have permitted the jury to impose the death sentence under Nevada law. Nev.Rev.Stat. § 200.-030(4)(a).

■ The presence of one valid aggravating circumstance suffices to support a sentence of death against the contention that another aggravating circumstance is insufficient, standing alone, to support the sen-

tence. *Zant v. Stephens*, 462 U.S. 862, 880–84, 103 S.Ct. 2733, 2744–47, 77 L.Ed.2d 235 (1983) (upholding death sentence, in spite of presence of invalid aggravating circumstance, for murder committed by escaped convict who had previously been convicted of capital crime.) Neuschafer offers no distinction between his case and the circumstances in *Zant v. Stephens*, and we can find none. The aggravating circumstances found by the jury are unchallenged, namely commission of the murder by a person under sentence of imprisonment and by a person who was previously convicted of another murder, and are sufficient to support the sentence. There is no contention that details of the strangulation should not have been brought to the jury's attention in the sentencing phase, nor could there be such an argument under Nevada law. This was a circumstance relevant to the offense which bore on the jury's determination whether to impose the death penalty even assuming it was not in itself an appropriate aggravating factor. Nev.Rev. Stat. § 175.552. *Zant v. Stephens* is squarely applicable here.

■ Neuschafer argues that his sentence was disproportionate, apparently on the premise that the death penalty·has not been decreed in other strangulation cases, and he claims the district court should have provided an evidentiary hearing on· this point. This argument ignores the proposition, explicit in the jury's findings, that the sentence was enhanced on two statutory grounds not related to the means of the killing, grounds which, as we have held, are sufficient to support the imposition of the death penalty. Neuschafer committed the crime while in prison and he had previously been convicted of other murders. There is no showing that Neuschafer's sentence was disproportionate to sentences received by other offenders in these circumstances. The minor premise of Neuschafer's argument, that there is a factual basis for a showing of disproportionality, could not be established, therefore, within the framework Neuschafer offers.

■ The major premise that a factual showing of disproportionality would require issuance of a writ of habeas corpus is also flawed. To the extent that Neuschaf-

er's argument is based on Nevada law, he cannot obtain relief in a federal habeas corpus proceeding. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197–98 (9th Cir.1983). We note for the record, however, that the Nevada Supreme Court conducted a proportionality review of Neuschafer's sentence, as well as a determination that the sentence was not influenced by any arbitrary factors. *See* 705 P.2d at 613 & n. 5. Finally, constitutional principles do not require a state court, or the federal court in habeas corpus proceedings, to engage in any comparative proportionality review, at least where a state's capital sentencing process contains checks on arbitrariness such as the mitigating and aggravating circumstances in the Nevada statute. *Pulley v. Harris*, 465 U.S. 37, 50–51, 104 S.Ct. 871, 879–80, 79 L.Ed.2d 29 (1984). There is no valid constitutional or federal objection to the imposition of the capital sentence.

AFFIRMED.

CHAMBERS, Circuit Judge, concurring:

I concur in Judge Kennedy's opinion affirming after the remand. I still adhere to the proposition in my original dissent that the notes or "kites," the contents of which were before us, were enough for affirmance on round one.