Springer, J.,
concurring in part and dissenting in part:
I concur in the judgment of conviction, but I dissent from the judgment of death.
I dissent because, after studying Nevada’s statutory death-sentencing scheme and after reading the present Majority Opinion and other opinions of this court dealing with the death penalty, I have become convinced that no one, including the members of this court, presently understands precisely what juries are required to do in Nevada when they are asked to decide between the death penalty and life imprisonment. Because this court, to date, has been unable to provide any clear and consistent guide to judges, juries, prosecutors or defense counsel as to the correct procedure for juries to follow in the death-sentencing process, I conclude that Canape has been denied the right of due process of law under our federal and state Constitutions. I would remand for a new death-penalty hearing, at which I would hope that the trial court, under the direction of the supreme court, would be able to give the sentencing jury a clear understanding of how to proceed properly in making the momentous life-death decision.
Under our federal Constitution the need to channel a death-sentencer’s discretion is the “fundamental principle” that must ground all state death sentencing statutes; and state statutes must “genuinely narrow the class of persons eligible for the death penalty.” Zant v. Stephens, 462 U.S. 862, 877 (1983); see Godfrey v. Georgia, 446 U.S. 420, 428 (1980); Furman v. Georgia, 408 U.S. 238 (1972). There are two distinct and discrete ways in which states have gone about circumscribing the limited class of persons who may constitutionally be put to death. One way is to limit the sentencer’s discretion by setting up a “weighing” procedure whereby the sentencer must arrive at the life-death decision by weighing certain statutorily defined and limited “circumstances.” Whether a murder convict is sentenced to life imprisonment or death is determined by this weighing process and by how much weight the sentencer gives to “aggravating circumstances,” when weighed against “mitigating cir *889 cumstances.” The sentencer’s discretion is limited to the weighing of the two kinds of statutory circumstances against each other. Once the weighing has been done, the sentencer is bound by its calculations; that is to say, if aggravating circumstances are found to outweigh mitigating circumstances, the sentencer must impose death, and if the opposite is true, life imprisonment. States which employ this scheme are called “weighing states.”
The other manner in which death-sentencing statutes prescribe the method of sentencing is to allow the sentencer “to exercise unbridled discretion in determining whether the death penalty should be imposed[, but only] after it has found that the defendant is a member of the class made eligible for that penalty by statute.” California v. Ramos, 463 U.S. 992, 1009 n.22 (1983) (quoting Zant v. Stephens, 462 U.S. 862, 875 (1983)). States with such schemes are called “nonweighing states,” because the actual life-or-death decision is neither dependent upon nor determined by the weighing of statutory aggravating circumstances against mitigating circumstances. The sentencer’s decision in non-weighing states is made in two stages: first, the sentencer follows statutory directions in deciding whether the murder convict is a member of the death-eligible class; and, if this is found, the sentencer has virtually unlimited discretion in making the life-death decision. In a weighing state the sentencer
must weigh the aggravating factor or factors against the mitigating evidence.[1] By contrast [in non-weighing states] the jury must find the existence of one aggravating factor *890 before imposing the death penalty, but aggravating factors as such have no specific function in the jury’s decision whether a defendant who has been found to be eligible for the death penalty should receive it under all the circumstances of the case.
Stringer, _ U.S. at _, 112 S.Ct. at 1136.
Whether a state has adopted a weighing or non-weighing death-sentencing scheme is of “critical importance” in reviewing the sentencing process. Id. at _, 112 S.Ct. at 1137; see Maynard v. Cartwright, 486 U.S. 356 (1988). Whether a weighing or non-weighing approach is established by a state’s death-sentencing statutes is of critical importance because the two sentencing methods are so irreconcilably different. A sentencing jury obviously has to be told which of the two methods it is required to employ and whether it is required to weigh one set of statutory circumstances against another or is required to follow the two-stage process of the non-weighing state. “When the jury is the final sentencer, it is essential that the jurors be properly instructed regarding all facets of the sentencing process.” Walton v. Arizona, 497 U.S. 639, 653 (1990). A jury cannot properly impose a death penalty without being clearly instructed as to which of the two approaches it is required to employ. Either statutory scheme is fraught with the potential for confusion and misunderstanding[2]; but if the sentencer is confused by the instructions of the court as to whether it is to sentence by weighing statutory circumstances or by engaging in the two-stage, non-weighing process, then serious questions of due process present themselves.
*891 It is difficult not to conclude that Instruction No. 5, taken from NRS 175.554, (set out in the Young Plurality Opinion) was confusing and misleading to the jury. To me it is likely but not at all certain that the jury was misled by the “outweigh” and “based-upon-these-findings” language, discussed in some detail below, into incorrectly engaging in the process of weighing aggravating circumstances against mitigating circumstances as the means of arriving at the death penalty. The real problem, of course, is that it is impossible to tell how the jury read this instruction. It is for this reason, primarily, that Canape is denied due process of law as required by the Due Process Clause and by Article I, Section 8 of the Constitution of Nevada.
There is no way of knowing whether the jury took Instruction No. 5 to mean that it was to arrive at its decision by weighing aggravating circumstances against mitigating circumstances or by the two-stage non-weighing process which I believe is a proper reading of the instruction and of the statute. One reason that I feel safe in saying this is that in the present opinion and in past opinions this court has conflated the two incompatible death-sentencing approaches. In the Young Plurality, the court incorrectly refers to Nevada as a “weighing state,” while the Steffen Concurring Opinion (at page 19) sets out three conditions which describe perfectly the two-step, non-weighing, death-eligibility process that I espouse. If a majority of this court cannot tell whether Nevada is a weighing state or a non-weighing state, then I am forced to believe that some trial judges, some jurors, some prosecutors and some defense lawyers must be having the same problem. The Majority writes about “weighing under Nevada law” and the “required weighing of aggravating circumstances” and cites Deutscher v. Whitley, 991 F.2d 605, 606-07, (9th Cir. 1993), as authority for the proposition that Nevada is a “weighing state” (Young Opn. at 13).[3] The Majority relies on Clemons v. Mississippi, 494 U.S. 738 (1990), which is a Supreme Court review of a weighing state’s (Mississippi) death penalty procedures. Then, amazingly, after all this weighing, I see a major heading in the Young Plurality entitled, “Determining death *892 eligibility.” Death eligibility is part of the two-stage process in non-weighing states. As Justice Kennedy tells us in Stringer, aggravating factors “have no specific function” in a jury’s deciding “whether a defendant who has been found to be eligible for the death penalty should receive it.” _ U.S. at _, 112 S.Ct. at 1136. It is, of course, true that aggravating circumstances have no specific function in the decision-making process in non-weighing states such as Nevada. I would go on to point out that even if a jury were to weigh some of these circumstances, the jury is not told what to do after it is done weighing. If a jury believed that it was supposed to arrive at its verdict by weighing aggravating circumstances against mitigating circumstances, it would not have the slightest hint as to what it was supposed to do with the result it reached. After the weighing is done then the jury “may ” do anything it wants. “What is the point in weighing?”, it must ask. That the Majority should write of both weighing and death eligibility in the same opinion brings home to me the profound disorder inherent in our “death penalty jurisprudence.”
This is not the first time that this court has muddled the two death sentencing methods, but it is, I must admit, the first time that the enormity of the confusion has dawned on me.[4] For example in Dawson v. State, 103 Nev. 76, 80-81, 734 P.2d 221, 223 (1987), this court addressed the death penalty process as though the decision must be reached by way of weighing statutory circumstances, when it wrote that a death sentencer must “weigh[] the mitigating circumstances to arrive at a final decision as to whether the defendant shall live or die.” 103 Nev. at 80, 734 P.2d at 223 (emphasis added). The court in Dawson went on to speak of the “delicate task which the trier of fact has in weighing the mitigating circumstances against the aggravating *893 circumstances.” 103 Nev. at 81, 734 P.2d at 224 (emphasis added). This language is pure “weighing state” — the sentencer arrives at its “final” decision, a death sentence or a life sentence, through the process of weighing. We find similar “weighing” language in Jimenez v. State, 105 Nev. 337, 343, 775 P.2d 694, 698 (1989), in which we said that “a jury can consider only aggravating circumstances that are grounded in fact and weigh those aggravating circumstances against the mitigating circumstances.” (Emphasis added.)
Our case law also lends support to a contrary interpretation, namely, that Nevada is not a weighing state and that the sentencing decision is not “arrived at” through weighing. As pointed out by Justice Steffen in his Concurring Opinion, the case of Gallego v. State, 101 Nev. 782, 711 P.2d 856 (1985), interprets our statutes as being non-weighing and requiring a two-stage process wherein death eligibility is determined first and then the life-death decision is made in the traditional manner without consideration of the statutorily defined aggravating and mitigating circumstances as such. If Justice Steffen sees Nevada as a non-weighing state (and I am not certain whether he does or does not), then I cannot understand his reliance on Clemons, which deals exclusively with weighing of aggravating circumstances against mitigating circumstances in Mississippi, a weighing state. Apparently, he too wrongly thinks that we can be both a weighing and a non-weighing state.
I have concluded that Nevada is a non-weighing state and that sentencers must engage in the two-stage process mentioned above without reference to aggravating circumstances. In saying this I also must add that I think I have an understanding of how the wide-spread confusion between weighing and non-weighing procedures has been generated by the Nevada statute and by the blurry judicial gloss that this court has put upon it. There are two parts of NRS 175.554 that have created confusion among the lawyers in my chambers; and I would wager that these are the sources of confusion elsewhere.
Perhaps the most important source of misunderstanding in our statute is found in NRS 175.554(2)(c), wherein it is provided that a sentencing jury must determine whether aggravating circumstances exist and then, “[bjased on these findings [as to whether aggravating circumstances and mitigating circumstances “exist”], whether the defendant should be sentenced to life imprisonment or death.” This language surely can be read to mean that the sentencing decision must be based in some unspecified way on the existence of statutory aggravating and mitigating circumstances. When one reads the “based-on-these-findings” *894 language in conjunction with the later phrase, “that there are no mitigating circumstances sufficient to outweigh the aggravating circumstances,” it is certainly possible to be misled into thinking that the sentencing decision must be “based on” a weighing process. Id. (emphasis added). This is probably why this court mistakenly said in Dawson that the life or death sentence must be “arrived at” through a weighing process.
Notwithstanding the mentioned “based upon” and “outweigh” language, Nevada is not a weighing state. The word “outweigh” is used only with reference to the first, death eligibility stage and has nothing to do with the sentencing process. A death sentencer in Nevada is not required by our statutes to “arrive at” the sentencing decision by weighing but, rather, is entitled to exercise “unbridled discretion” in making that decision.
As I have said before, the uncompromisable distinction between weighing and non-weighing procedures is of “critical importance.” One of the reasons that the distinction is so vitally important is that substantially more intense appellate review is called for in weighing states because it is very hard for a reviewing court to know what to do when one of the “weights,” say one of the aggravating circumstances, is removed from the scale. Aside from the harmless error analysis permitted by Clemons, there are only two things the appellate court can do when one of the weights is missing: one is to send the case back to the sentencer to weigh all over again, without the invalidated aggravating circumstance on the scale; the other is to have the appellate court do what it has done in this case, namely, to put on its trial garb and try to “reweigh” all the evidence, making sure that the offending, invalid aggravating circumstances are not permitted on the metaphorical scale. The stated problem of what to do with invalid aggravating circumstances is indeed a problem in weighing states; but it is not a problem in non-weighing states, because death eligibility ordinarily depends on the finding of only one aggravating circumstance.[5] In most non-weighing states, if one of multiple aggravating circumstances found by the sentencer is declared invalid, death eligibility may still be maintained for so long as one aggravator remains intact. See Zant, 462 U.S. 862.
The Majority’s reliance on Clemons clearly has no application in this, or any, non-weighing state because Clemons is a review of the weighing process. Clemons says (incorrectly, I believe) that if a few aggravating circumstances are missing because they have *895 been found in an unconstitutional manner, the appellate court is permitted to fill in the gap simply by reweighing the remaining, valid circumstances and then resentencing the defendant. Such appellate evidence-weighing has no meaning at all in a non-weighing state like Nevada. If the jury did not sentence by weighing, then certainly this court has no business in sentencing by reweighing; and, as I will explain below, the Majority’s attempt to reweigh and thereby resentence Canape was incorrectly executed in a manner contrary to Stringer v. Black, _ U.S. _, 112 S.Ct. 1130 (1992).
If, as I have pointed out, the difference between the two schemes — weighing and non-weighing — is indeed of “critical importance,” then this importance has not been properly recognized in Nevada, and Canape has been denied due process of law.

Nevada’s Statutory Scheme

One thing about this case that cannot be challenged is the marked difference of opinion among the justices as to the meaning of our death sentencing statutes. I say that the other justices fail to recognize the “critical importance” of distinguishing between weighing and non-weighing. Justice Steffen says that I am up a tree — that I am “lost . . . among the dense leaves and branches of [a] great tree.” (Op. at 883.) If I am indeed lost in a tree, it cannot be denied that I have a lot of arboreal company, including, if I am not mistaken, Justice Steffen and his colleagues in the Majority. The use of the lost-in-a-tree metaphor illustrates, much better than I can, the tangled state of our death-sentencing jurisprudence. Let me, nonetheless, offer for consideration by the bench and bar my own tree-top view of Nevada’s death-sentencing statutes:
Nevada’s statutes provide for a sequented, two-stage sentencing process. The first stage I would call the “Death-Eligibility Stage”; the second stage I would call the “Death-Imposition Stage.” In the death-eligibility stage the jury “narrow[s] the class of persons eligible for the death penalty and . . . [thereby] justifies] the imposition of a more severe sentence on the defendant compared to others found guilty of murder.” Zant, 462 U.S. at 877. The second, death-imposition stage is “an individualized determination on the basis of the character of the individual and the circumstances of the crime.” Id. at 879.
The Nevada statutes resemble the Georgia, non-weighing death-sentencing scheme rather than that of weighing states such as Arizona and Mississippi. In Georgia, death-eligibility arises out of a finding of a statutory aggravating factor. Once death eligibility is determined in this way, disallowance of one or more *896 of a number of found statutory aggravators for one reason or another will not in itself abnegate death-eligibility and thus require reversal of the penalty judgment.
In Nevada, the sentencer’s finding of at least one aggravating circumstance coupled with a second, necessary finding that aggravating circumstances do not “outweigh” mitigating circumstances, result in the status of death eligibility but do not play a part in guiding the jury in its exercise of life-or-death sentencing discretion (the “death-imposition” process) beyond that of narrowing the class of persons who are to become death-eligible.
NRS 175.554(2)(c) permits the jury to impose a death sentence only (1) “if it finds at least one aggravating circumstance and [2] further finds that there are no mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances found.” The jury is thus required to carry out its decision-making process in two stages. The first stage consists of a determination of death-eligibility by satisfying the two conditions specified in NRS 175.554(2)(c), namely, that the jury find at least one statutory aggravating circumstance and, secondly, that the jury find that mitigating circumstances do not outweigh aggravating circumstances.[6] If the two conditions for death eligibility are found, the jury goes on to the second stage, which is the making of the ultimate life-death decision in the manner that juries have customarily performed this task, by making the essentially moral decision as to whether the murder convict deserves to be punished by death.
The statute does not use the word “weigh.” The word “outweigh” is used once, and that is in the concluding, unnumbered paragraph of NRS 175.554(2), where it relates to the establish *897 ment of death-eligibility only. There is no other reference in the death-sentencing statute to the concept of “weighing” in relation to the life-death decision-making process. The mentioned, unnumbered paragraph in NRS 175.554(2) tells the jury that a first degree murder convict is eligible for the death penalty only if (in addition to having found a statutory aggravating circumstance) the jury “finds that there are no mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances found.” (Emphasis added.) As I have said, this is simply a statement of the second of two conditions precedent which must be fulfilled before a jury in a death case can proceed with the imposition stage and its deliberations as to whether a murder convict should be put to death.[7]
Unlike the so-called “weighing states,” the jury in Nevada is not compelled to make the life-death decision on the basis of weighing. The jury in Nevada “may,” not must, impose death and then “only” if it finds the two mentioned death eligibility conditions to be present. On the other hand, in weighing states the sentencers are told, more or less explicitly, to ifnpose death if one kind of statutory circumstance outweighs the other.[8]
*898 Under Nevada’s death-eligibility scheme, when a defendant has been found by a jury to have committed an “aggravated first degree murder” and is, thus, “death-eligible,” the jury may then go on to consider the life-or-death “option” (see Instruction No. 6, discussed in footnote 8). In making the ultimate life-death decision, the jury is not restricted to “weighing” nor is it restricted to “found” aggravating or mitigating circumstances. The jury is entitled to take into account any matter “which the court deems relevant to sentence.” NRS 175.552. The sentencer “may appropriately consider character evidence outside the nine areas of aggravating circumstances.” Allen v. State, 99 Nev. 485, 488, 665 P.2d 238, 240 (1983). The sentencer may, for example, consider the convict’s future dangerousness, Redmen v. State, 108 Nev. 227, 828 P.2d 395 (1992), and may consider what the “person deserves.” Dawson v. State, 103 Nev. 76, 80, 734 P.2d 221, 223 (1987). There is obviously much more involved in death-sentencing in Nevada than merely weighing the statutory aggravating and mitigating circumstances that a sentencer has found to exist in a particular case.[9]
*899 The “based upon” language in subsection (c) should be interpreted in a manner that is not inconsistent with historical practices. This can be done only if we read the “based upon” language to mean that findings relative to statutory aggravating circumstances and mitigating circumstances provide the predicate findings for death eligibility only and not for the ultimate decision as to whether life or death should be imposed.[10] Whether the defendant is eligible for the death sentence (and not whether the death sentence should actually be imposed) is to be based upon the sentencer’s findings relative to statutory aggravating and mitigating circumstances. This reading is consistent with my interpretation of the federal and state constitutions, with the statutory death sentencing structure, with NRS 175.552, and with Allen, 99 Nev. 485, 665 P.2d 238.
The Meaning of “Only If It Finds . . . That There Are No Mitigating Circumstances Sufficient to Outweigh ...”
The second condition of death-eligibility is the jury’s finding that mitigating circumstances do not outweigh aggravating dr- *900 cumstances. Once we understand that this phrase does not relate to the ultimate, “final” decision making process, we can go on to inquire as to what the meaning is in the context of death-eligibility.
The jury need not engage in an actual weighing process in order to conclude that aggravating circumstances do not outweigh mitigating circumstances. When I see a small child standing next to a Sumo wrestler, I do not have to weigh them to conclude that the child does not “outweigh” the Sumo wrestler. For example, in a hypothetical case of a vicious torture murder committed by a previously convicted torture murderer, a jury would not be required to engage in a delicate “weighing” in order to come to the conclusion that mitigating circumstances do not outweigh aggravating circumstances. I should think that in almost all deliberate murders this would be more or less the case. Actually, it is not easy to imagine a malicious homicide in which the good “outweighs” the bad. (See footnote 1.)
In the present case, defense counsel presented no evidence in mitigation, and the jury found none. Since there are no found mitigating circumstances, it must follow that mitigating circumstances do not “outweigh” aggravating circumstance, as long as there remains at least one valid aggravating circumstance. Cf. Nevius v. State, 101 Nev. 238, 251, 699 P.2d 1053, 1061 (1985). It is hard to argue under such circumstances that Canape was not death-eligible. Instead of concluding that Canape was death eligible and that the jury had the discretion to impose the death penalty, the Majority, as I have noted, has decided to resentence Canape by reweighing the aggravating circumstances and mitigating circumstances — incorrectly so, it would seem.[11]

*901
Conclusion

It is the duty of this court to clarify both the death sentencing statutes and its cases interpreting the statutes. The deadly lack of clarity in our death sentencing scheme is vividly illustrated by the instructions given by the trial court in this case. Instruction No. 6 correctly told the jury that in cases “where the State has established beyond a reasonable doubt that an aggravating circumstance or circumstances exists and the mitigating evidence is not sufficient to outweig[h] the aggravating circumstance,” the jury may then “consider the option of sentencing the defendant to death.” (Emphasis added.) Instruction No. 5, on the other hand, is taken directly from NRS 175.554 and may have led the jury to believe that the death or life decision must in some unprescribed way be based upon a process of weighing mitigating circumstances against aggravating circumstances. After reading the Young Plurality, I am forced to conclude that the jurors in this case probably, like the justices in the Majority, do not understand *902 that what they were supposed to do was to satisfy the two death-eligibility conditions, after which, without referring back to the death-eligibility process and without engaging in any additional “weighing” of aggravating and mitigating circumstances, they were free to consider all factors, statutorily-defined and otherwise, in coming to the life-death decision. They may very well have incorrectly believed, as does a majority of this court, that they were supposed to be engaged in some kind of exotic weighing game. There is no way of telling just how the jury read these two instructions.
The main problem with this case is the inescapable confusion that faces juries, judges and counsel in unravelling the death-sentencing statutes. I believe that the confusion and misunderstanding rises to the level of deprivation of life and liberty without due process of law that is prohibited under the Fourteenth Amendment and the Due Process Clause of Article I, Section 8, of the Nevada Constitution. What this court should be doing in this case is to announce a clear declaration that Nevada is a non-weighing state and that the proper procedure for juries and panel sentencers is to engage in the two-stage process discussed above. The trial courts could then design an unambiguous instruction that would instruct death penalty juries on the law of death sentencing. (See suggested instruction, attached.) After the necessary clarification is made, Canape should be given a new penalty hearing that is conducted in accordance with Nevada law, properly understood by the trial court and his new counsel.
Due process has been denied to Canape in the penalty phase of this case; and there is reason to believe that he may have been denied adequate representation of counsel.[12] I would reverse the *903 death penalty judgment and remand the case for a new death penalty hearing, in accordance with the principles stated in this dissent and with the use of an instruction comparable to the form instruction appended to the dissenting opinion.
APPENDIX*
JURY INSTRUCTION — PENALTY PHASE
The Defendant,., has been found guilty of first-degree murder. The jury must now decide whether the penalty to be imposed should be life imprisonment with possibility of parole, life imprisonment without possibility of parole, or death. In making this decision, the jury must follow the procedure set out in this instruction.
Step 1 The jury must first decide whether the prosecution has proved the existence of one or more aggravating circumstances beyond a reasonable doubt. The aggravating circumstances which the prosecution alleges to be present are the following:
[List aggravating circumstances alleged.]
The specific aggravating circumstances related to this case are defined in other instructions.
The verdict of the jury that one or more aggravating circumstances exists must be unanimous. If the jury finds that no aggravating circumstances are present, it cannot impose the death penalty and must proceed to consider whether life imprisonment without possibility of parole or life with possibility of parole is the proper sentence.
Step 2 If the jury finds that the existence of one or more aggravating circumstances have been proved beyond *904 a reasonable doubt, it must determine whether mitigating circumstances exist which are sufficient to outweigh the aggravating circumstance or circumstances. In this step you are allowed to consider only the aggravating circumstances found in Step 1 against the mitigating circumstances of which evidence has been presented. A mitigating circumstance includes any fact which a juror believes makes the appropriate sentence a sentence less than death.
If the jury unanimously concludes the mitigating circumstances outweigh the aggravating circumstances, a sentence of death cannot be imposed, and the jury should proceed to consider whether the appropriate sentence is life imprisonment without possibility of parole or life imprisonment with possibility of parole. (Step 4.)
If the jury finds that the mitigating circumstances do not outweigh the aggravating circumstances, then and only then may it consider whether a sentence of death is the proper sentence. (Step 3.)
Step 3 If the jury finds that one or more aggravating circumstances are present and that the mitigating circumstances do not outweigh the aggravating circumstances, the jury must then decide which of the possible penalties is the proper sentence in the case, considering the nature of the crime and the character and background of the defendant. In making this determination, you do not weigh aggravating or mitigating circumstances against one another; rather, it is your duty to review all of the evidence which has been presented to you on the issue of the proper penalty, and make a reasoned moral choice whether a death sentence, or a sentence less than death, should be imposed in this case.
The jury is never required to impose a death sentence, and no juror is ever required by law to vote in favor of a death sentence. In considering the evidence relevant to the proper sentence, you must not consider any evidence which was not admitted or was ordered stricken by the court.
In order to impose a sentence of death, your vote must be unanimous.
*905 Step 4 If you decide not to impose the death penalty, you must then decide whether the appropriate penalty is life imprisonment without the possibility of parole or life imprisonment with the possibility of parole. In making this determination, you must consider all the evidence presented which is relevant to the appropriate penalty.

I maintain throughout this dissent that Nevada is not a weighing state— that is to say, our statutes do not tell juries to arrive at their decision just by weighing statutory “factors” against each other but, rather, by a discretionary process in which all evidence relating to the murder and the murderer are considered. The Nevada, “non-weighing” sentencing method is far superior to a weighing scheme for a number of reasons. I seriously doubt whether mitigating circumstances ever outweigh aggravating circumstances in a case of malicious, deliberate first degree murder. I believe that when juries refuse to impose the death penalty in weighing states, they do so for the same reason that they do so in non-weighing states, because they do not believe the defendant deserves to die, and not because of some sort of incomprehensible “weighing” activity on their part. I do not believe that a jury is capable of isolating and weighing the weight entities represented by these statutory factors — discrete little weight blobs that must be put on a metaphorical scale by juries either on the life side or on “death’s side of the scale.” Stringer v. Black, _ U.S. _, 112 S.Ct. 1130, 1137 (1992). My point was very well put by Justice Harlan in McGautha v. California, 402 U.S. 183, 204 (1971):
To identify before the fact those characteristics of criminal homicides and their perpetrators which call for the death penalty, and to express these characteristics in language which can be fairly understood and applied by the sentencing authority, appear to be tasks which are beyond present human ability.

It should be apparent to any reader of this dissent that no one really understands what all this “weighing” is about. There is a growing body of social science data relative to jury confusion created by present-day death sentencing statutes. See, e.g., Hans Zeisel, Jury Surveys: Comprehension of Death Penalty Application (April 1990; January 1992), quoted in United States ex rel. Free v. Peters, 806 F.Supp. 705, 732 Appendices A & B (N.D.Ill. 1992). These studies indicate that there is much need for greater clarity of instructions in death cases.
In his concurring opinion in Walton, in discussing what he saw as being two contradictory positions being taken by the Supreme Court in death cases, Justice Scalia remarked: “An observer unacquainted with our [the Supreme Court’s] death penalty jurisprudence (and in the habit of thinking logically) would probably say these positions cannot both be right.” 497 U.S. at 656 (Scalia, J., concurring in part and concurring in the judgment). I suggest that one who is in the habit of thinking logically would probably say, in this case that the two positions (weighing and non-weighing) “cannot both be right.”
In the assumption that juries do not and cannot understand instructions as they are now being given, I have presumed to construct a “plain English” instruction that would incorporate the step-by-step, death-eligibility interpretation of the death sentence statutes. I have attached this instruction as an appendix to this dissent.

It is worth noting that the Young Plurality cites to Neuschafer v. Whitley, 816 F.2d 1390 (9th Cir. 1987), relative to the consequences of an invalid aggravating circumstance. Neuschafer is written in the assumption that Nevada is a non-weighing state. The Neuschafer court observed that Neuschafer had offered “no distinction between his case and the circumstances in Zant v. Stephens, and we can find none.” Id. at 1393. If there is no distinction between the Neuschafer case and Zant, (a proposition with which I heartily agree), then, Nevada is, as I have insisted, a non-weighing state. As I discuss below, Zant, is a non-weighing, two-stage, death-eligibility case in which aggravating circumstances “have no specific function,” once death eligibility is determined. Stringer, _ U.S. at _, 112 S.Ct. at 1136.

Further indication of the confusion of which I speak is evidenced by a recent law review article in which Nevada is listed as a “weighing state,” based on NRS 200.030(4)(a). Christian D. Marr, Criminal Law: An Evolutionary Analysis of the Role of Statutory Aggravating Factors in Contemporary Death Penalty Jurisprudence — From Furman to Blystone, 32 Washburn L.J. 77, 99 n.127 (1992). This statute provides that “[e]very person convicted of murder of the first degree shall be punished: (a) By death, only if one or more aggravating circumstances are found and any mitigating circumstance or circumstances which are found do not outweigh the aggravating circumstance or circumstances.” NRS 200.030(4)(a) (emphasis added). The author of the article apparently took the work “shall” (which is an apparent contradiction to “may impose a sentence of death” employed in NRS 175.554(2)) to indicate that sentencing was arrived at through weighing and that we were a weighing state. The use of the word, “only,” however, indicates that the sentencer must satisfy certain conditions and shall sentence to death only when the conditions are met. The Majority justices are not the only ones who are confused by our death-sentencing statutes.

As noted in the text, Nevada has two death eligibility requirements, the finding of at least one aggravating circumstance and the negative finding that mitigating circumstances do not outweigh aggravating circumstances.

The cited clause provides for a second, additional condition for death-eligibility and has nothing to do with the actual life-death decision. After finding the presence of an aggravating circumstance, the sentencer must go on to assure itself that mitigating circumstances do not outweigh aggravating circumstances — that the good news not outweigh the bad. In most cases this will not involve a delicate process of measuring factors that favor death against those which do not. As in many situations in which one item is weighed against another, it will be quite obvious in many, if not most, instances that an aggravated murder does not involve “mitigating” circumstances which will overcome the evil inherent in an intentional killing of a human being. Actually, it seems to me that this second condition, assurance that the good does not outweigh the bad, affords very little protection to murderers insofar as the preliminary death-eligibility determination is concerned. If the clause in question is to be assigned any significance, it can only be that the sentencer must be convinced preliminarily that the subject murder does not involve such ameliorating and mitigating factors as to overcome or “outweigh” the evil inherent in the murder. I suspect that if such a condition truly existed, the convicted murderer would not have been found guilty of aggravated murder in the first place.

The two conditions for death-eligibility were created in 1977 to conform with the constitutional need for “channeling and limiting ... the sentencer’s discretion in imposing the death penalty,” which has been recognized by the Supreme Court as a “fundamental constitutional requirement.” Maynard v. Cartwright, 486 U.S. 356, 362 (1988). In Nevada, once the two statutory conditions are met, the convict becomes “death-eligible.” As put in Instruction No. 6 given to the jury in this case, the sentencer “may consider the option of sentencing the defendant to death where the State has established beyond a reasonable doubt [the two conditions] that an aggravating circumstance or circumstances exists and the mitigating evidence is not sufficient to outweigfh] the aggravating circumstance.” The jury may very well have read Instruction No. 6 as requiring the kind of two-step, death eligibility approach that I believe our statute demands; however, in Instruction No. 5, the court uses the statutory language of NRS 175.554(2)(c), “[b]ased upon these findings, whether the defendant should be sentenced to life imprisonment or death.” This statutory language, as discussed in the text, absent very careful and in-depth analysis, leads very easily to the conclusion that the jury is required to arrive at its life-death decision strictly by means of weighing aggravating circumstances against mitigating circumstances. Again, we have no idea of how juries might be reading the two different, and probably contradictory, instructions.

For example, in Arizona, the death sentencer “shall impose a sentence of death” if the sentencer “finds one or more of the aggravating circumstances . . . and that there are no mitigating circumstances sufficiently substantial to call for leniency.” Ariz. Rev. Stat. Ann. § 13-703(E) (1989) (emphasis added). The Arizona Supreme Court reads the second, “sufficiently-substantial” requirement to mean that the sentencer must “weigh” aggravating circumstances against mitigating circumstances. This being the case, “weighing” becomes the integral, mandatory essence of the death-sentencing process in Arizona. The sentencer has no discretion and “shall” *898 sentence to death when it finds one or more aggravating circumstances and, secondarily, weighs the aggravating circumstances and the mitigating circumstances and finds that the mitigating circumstances do not weigh enough to call for leniency. Once an aggravating circumstance is found, the Arizona sentencer sets about “weighing” circumstances; and if the mitigating circumstances do not weigh-up to the aggravating circumstances, a death verdict must be returned.
It is important to note that Nevada’s scheme is much different from Arizona’s. The Nevada sentencer is not required to return a death sentence even in the presence of a found aggravating circumstance and even if that circumstance outweighs mitigating circumstances. Unlike Arizona, the death sentencing decision in Nevada is strictly a discretionary decision. The jury “may” consider all relevant factors, even undefined, unspecified “aggravating circumstances” that go beyond those listed in the statute. NRS 175.552. Nevada could not, under its discretionary sentencing scheme, be saying: “You, sentencer, are free to weigh statutorily-defined aggravating circumstances, undefined aggravating circumstances, statutorily-defined mitigating circumstances and undefined mitigating circumstances; and, when you come up with their weights, based on that measurement alone, you ‘may’ somehow ‘arrive at’ a life or death decision.” This does not make sense. It does not make sense, either, to think that in Nevada, where the sentencer is given total discretion in making the death-decision (subject to the two conditions discussed in the text), “weighing” has anything to do with the actual, final decision as to whether to impose a death or life imprisonment penalty. It makes even less sense to say that in Nevada the sentencer must “arrive at” the death decision purely through some kind of “weighing” mechanism.

As I see it, the only way that one can conclude that death-sentencing is equated to statutory circumstance-weighing is by a rather contorted reading of lettered subparagraphs (a) and (b) of NRS 175.554(2). Subparagraphs (a) and (b) simply require the sentencer to determine “[wjhether” aggravating or mitigating circumstances “exist.” (Emphasis added.) Subsection (c) states that “[bjased upon these findings” (that is, the findings required by (a) and *899 ib) as to whether there are any aggravating circumstances or mitigating circumstances), the sentencer is to determine “whether the defendant should be sentenced to life imprisonment or death.” Subsection (2)(a), (b) and (c) can be paraphrased in this way: “The sentencer shall determine whether aggravating or mitigating circumstances exist and ‘based on these findings’ (as to whether such circumstances exist) decide whether the defendant should be sentenced to death or not.” This reading of the statute, however, makes no sense. A mere finding as to whether such circumstances exist is not of any consequence; so to make any sense out of it we have to read it to mean: “The sentencer shall decide whether aggravating or mitigating circumstances exist and based upon the aggravating and mitigating circumstances found by the sentencer decide whether the defendant should be sentenced to death or not.” This is not to say that we arrive at the death sentence by weighing. It does seem to say that the sentencer must base its decision on found aggravating and mitigating circumstances, and we know from NRS 152.552 and from the cases cited in the text that the sentencer may go beyond the found statutory circumstances in making the life-death decision. No matter how I read the statute, I cannot read it to mean that a jury must arrive at the death decision strictly through the process of weighing found aggravating circumstances against mitigating circumstances.

I note that in Mississippi, called by the Supreme Court a “weighing state,” the statute contains “based upon” language similar to ours; however, the phrase is used in a different context, and because it follows directly after a clause relating to mitigating circumstances outweighing aggravating circumstances, it comes a lot closer to making Mississippi a weighing state than does our statute. My own reading of the Mississippi statute tells me that even giving account to the differences between our own statute and theirs, it is arguable that Mississippi is not really a weighing state either. Even if our statute were identical to Mississippi’s, I would argue that we are not a weighing state; however, as our statute presently reads, it is quite clear that juries are not required to arrive at the life-death decision by weighing.

The Young Plurality declares on behalf of a majority of this court that the court “elect[s] to reweigh aggravating circumstances against evidence of mitigating circumstances.” If the Majority is serious about reweighing the evidence in this case, it is required to make a “thorough analysis of the role an invalid aggravating factor played in the sentencing process.” Stringer v. Black, _ U.S. _, 112 S.Ct. 1130, 1136 (1992). The only “analysis” that I can find in the Young Plurality is the assurance that the good justices made a “thorough examination of the entire record.” This is entirely possible, but it is certainly not of much help to me or to the defendant in trying to divine just what kind of an analysis resulted from the justices’ supposed “thorough examination of the entire record.” As I see it, the Majority evades the entire problem by refusing to tell us whether or not one of the aggravating circumstances was invalid, by announcing that the “arguably invalid” aggravating circumstance was “not a significant factor in the sentencing process.” Was it invalid or not? If the factor was invalid, why was it not significant? A very disappointing, if not nonexistent, analysis, I should say. If the Majority is bent on resolving this case by reweighing, an adequate treatment of how these measurements were made would require the court to discuss and analyze in detail all of the evidence presented during this trial in order to *901 come to a rational conclusion as to the effect of the invalid factor erroneously placed before the jury in this case. See Clemons v. Mississippi, 494 U.S. at 751-52 (1990); see also Parker v. Dugger, 498 U.S. 308 (1991) (state court deprived capital defendant of “individualized treatment to which he is entitled under the Constitution” by failing to conduct independent review of evidence, ignoring evidence of mitigating circumstances, and misreading trial judge’s findings; case remanded for meaningful appellate review, pursuant to Clemons, with instructions to reweigh evidence or conduct harmless error analysis).
There is another error in the way that the Majority claims to have reweighed the evidence in this case. Stringer requires, in cases of appellate reweighing, that in addition to making a “thorough analysis,” the “court must determine what the sentencer would have done absent the factor.” Stringer, _ U.S. at _, 112 S.Ct. at 1137. The Majority has failed to engage in this required guessing game. According to Stringer, when the trial court sentencer has been improperly “told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale.” _ U.S. at _, 112 S.Ct. at 1137 (emphasis added). The Majority is required by Stringer to make a ruling as to what the sentencer would have done absent the two aggravating circumstances found to be invalid. It did not do this. For this reason also, the Majority’s resentencing in this case should be nullified on federal constitutional grounds. Canape’s death sentence has now become an appellate court “resentence” imposed by appellate judges, casually and without analysis, and without making the determination required by Stringer of what the jury might have done had it not considered the “invalid factor.” Perhaps it is idle to point out these failings in the Majority Opinion because it is so clear that neither the jury nor this court should be sentencing Canape by weighing aggravating circumstances against mitigating circumstances; still, if the Majority is treating Nevada as a weighing state, it should have gone about it correctly and in accordance with federal constitutional law. As it stands, the death sentence that this court has decided to impose on Canape cannot withstand federal constitutional scrutiny.

In a penalty hearing, defense counsel will ordinarily make an effort to show that the murder convict is not death eligible and that if he/she is, then the convict does not deserve to be punished by death. There are three things, then, that defense counsel can do:
1. Show that there are no aggravating circumstances.
2. Show that mitigating circumstances outweigh aggravating circumstances.
3. Plead for mercy.
With regard to the second task, trying to show that mitigating circumstances outweighed aggravating circumstances, defense counsel did nothing. After apologizing to the jury for not showing up at the time the guilty verdict was returned and for not “being organized like I wanted to be,” defense counsel told the jury that he would be presenting “no evidence of mitigation” because such evidence was not “necessary.” The “best mitigation,” defense counsel told the jury, was “your gut feelings.” It seems to me that there ought to be something good that a defense lawyer can say about anyone — even a first degree murderer. Here, counsel appears to have gone out of his way to avoid anything good coming out about his client.
With regard to counsel’s elemental obligation to plea for his client’s life, *903 all I can find in the record is little more than counsel’s telling the jury, “if you want to impose the death penalty in this case, you can.”
Understandably, the public defender’s office, which handled this appeal, did not take to task the public defender who tried this case, so the matter of adequate counsel is not a part of this appeal. I would not be of a mind to send this case back for a new penalty hearing without giving defense counsel a chance to explain. Perhaps the quoted phrases will be seen as being out of context; nevertheless, it is clear to me that private counsel should be appointed for Canape and that this subject matter be explored at the trial court.